**ROYAL BUSINESS MACHINES, INC., Plaintiff,**

v.

**The UNITED STATES, Philip M. Klutznick, Secretary of Commerce; Robert E. Herzstein, Under Secretary of Commerce for International Trade, Department of Commerce: Robert E. Chasen, Commissioner of Customs, Los Angeles, California, Defendants.**

**Smith-Corona Group, Consumer Products Division, SCM Corporation, Intervenor.**

**Court No. 80–11–00056.**

United States Court of International Trade.

Dec. 29, 1980.

Rode & Qualey, New York City, Richard F. Treacy, Jr., Asst. Gen. Counsel, Washington, D. C. (Michael S. O'Rourke and Patrick Gill, New York City, of counsel), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C. (Velta A. Melnbrencis, New York City, of counsel), for defendants.

Eugene L. Stewart, Washington, D. C. (Terence P. Stewart, of counsel), for intervenors.

WATSON, Judge:

Plaintiff, the importer of a typewriter known as the Royal Administrator, brought this action on November 18, 1980, pursuant to 5 U.S.C. § 702[1] and 28 U.S.C. § 1581(i)[2] asking the Court to exercise its power under 28 U.S.C. §§ 1585[3] and 2643(c)(1)[4] to enjoin defendants from "retroactively" modifying the antidumping duty order of

---

1. § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof ...

2. § 1581. Civil actions against the United States and agencies and officers thereof

  .   .   .   .   .

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
"(1) revenue from imports or tonnage;
"(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
"(3) embargoes or other quantitative restrictions on the importation of merchandise for

reasons other than the protection of the public health or safety; or
"(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

3. § 1585. Powers in law and equity

The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."

4. § 2643. Relief

  .   .   .   .   .

"(c)(1) Except as provided in paragraphs (2), (3), of this subsection, the Court of International Trade may, in addition to the orders specified in subsections (a) and (b) of this section, order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand injunctions, and writs of mandamus and prohibition.

May 9, 1980,[5] to include the Royal Administrator typewriter and further asking the Court to direct the appropriate officials to liquidate entries of the typewriter and cancel the antidumping bonds which had been required on entries of that typewriter. A

### 5. 19 CFR Part 353

**Portable Electric Typewriters From Japan; Antidumping Duty Order**

**AGENCY:** U. S. Commerce Department.

**ACTION:** Antidumping Duty Order.

**SUMMARY:** This notice is to inform the public that separate investigations conducted under the Antidumping Act, 1921, and its superseding legislation, the Tariff Act of 1930, as amended, by the Commerce Department, the Treasury Department and the United States International Trade Commission have resulted in determinations that portable electric typewriters from Japan are being sold at less than fair value and that these sales are materially injuring an industry in the United States. All unappraised entries of this merchandise made on and after January 4, 1980, the date on which liquidation was suspended, will be liable for the possible assessment of special dumping duties. Deposits of estimated antidumping duties shall be required of all entries made on and after the date of publication of this antidumping duty order in the **Federal Register**.

**EFFECTIVE DATE:** May 9, 1980.

**FOR FURTHER INFORMATION CONTACT:** Steven Lim, Office of Investigations, International Trade Administration, U. S. Commerce Department, 14th St. and Constitution Ave., NW., Washington, D.C. 20230. Telephone: (202) 377-1776.

**SUPPLEMENTARY INFORMATION:** Section 201(a) of the Antidumping Act, 1921, as amended (19 U.S.C. 160(a)) gave the Secretary of the Treasury responsibility for determining whether imported merchandise is being sold at less than fair value. Pursuant to that authority, the Secretary of the Treasury tentatively determined that portable electric typewriters from Japan are being sold at less than fair value within the meaning of section 201(a) of the Antidumping Act of 1921 (19 U.S.C. 160(a)). (Published in the **Federal Register** of January 4, 1980 (45 FR 1220–2)). Pursuant to section 102(b)(2) of the Trade Agreements Act of 1979 (93 Stat. 189, 19 U.S.C. 1671) the tentative determination of the Secretary of the Treasury under the 1921 Act, was treated as a preliminary determination under section 733(b) of the Tariff Act of 1930, as amended (93 Stat. 163, 19 U.S.C. 1673b(b)) ("the Act"). Pursuant to section 735(a) of the Act (93 Stat. 169, 19 U.S.C. 1673d(a)), the Administering Authority made a final determination that portable electric typewriters from Japan are being sold at less than fair value, (Published in the **Federal Register** of March 21, 1980 (45 FR 18417–8)). Section 735(b) of the Act (93 Stat. 170, 19 U.S.C. 1673d(b)), gives the United States International Trade Commission responsibility for determining whether by reason of such sales at less than fair value a domestic industry is being or is likely to be materially injured. The Commission has determined, and on May 1, 1980, it notified the Secretary of Commerce that an industry in the United States is materially injured by reason of the importation of portable electric typewriters from Japan that are being sold at less than fair value within the meaning of the Act.

In accordance with section 736 of the Act (93 Stat. 172, 19 U.S.C. 1673e), Customs officers are directed to assess an antidumping duty equal to the amount by which the foreign market value of the merchandise exceeds the United States price of the merchandise for all entries subject to the "Withholding of Appraisement" notice published in the **Federal Register** on January 4, 1979 (45 FR 1220–2) and all future entries until further notice. On or after the date of publication of this notice, Customs officers shall require, at the same time as estimated normal customs duties on the merchandise are deposited, a deposit of estimated antidumping duties pending liquidation of entries of the subject merchandise on all entries, or withdrawals from warehouse, for consumption. Deposits shall be collected in the following amounts: Nakajima All: 4.36 percent ad valorem; Silver Seiko: 36.53 percent ad valorem; Brother Industries: 48.70 percent ad valorem; for any other exporters of the subject merchandise: 37.12 percent ad valorem.

I hereby make public these determinations, which constitute an antidumping duty order with respect to portable electric typewriters from Japan.

For the purposes of this notice, the term "portable electric typewriters" are those provided for in item 676.0510, Tariff Schedules of the United States Annotated.

Accordingly, Annex I, Part 353 of the Commerce Regulations (19 CFR Part 353, 45 FR 8208) is being amended by adding the following to the list of antidumping duty orders currently in effect:

| Merchandise | Country | Treasury decision |
|---|---|---|
| Portable electric typewriters. | Japan ........ | (45 FR——) |

(Section 736 of the Act (93 Stat. 172, 19 U.S.C. 1673e), and Section 353.48 of the Department of Commerce Regulations (19 CFR 353.48, 45 FR 8204))

**John D. Greenwald,**

Deputy Assistant Secretary for Import Administration.

May 6, 1980.

[FR Doc. 80–14388 Filed 5–8–80; 8:45 am]

**BILLING CODE 3510-22-M**

temporary restraining order was issued and was extended until the hearing on the preliminary injunction on December 16, 1980, at which time an extension until December 30, 1980 was consented to.

Defendants have moved to dismiss for lack of jurisdiction and for summary judgment. The Smith-Corona Group, Consumer Products Division, SCM Corporation (hereinafter, SCM) was allowed to intervene and filed a motion to dismiss. SCM, a domestic manufacturer of typewriters, was the petitioner in the administrative proceeding of which the May 9th final order was an outgrowth.

At the hearing on plaintiff's motion for a preliminary injunction, responses to all pending motions were filed, following which some additional filings, mandatory and voluntary, were made.[6] Based upon all these papers and proceedings the Court summarizes the history of this dispute as follows:

On April 9, 1979, SCM filed a petition with the Commissioner of Customs for the initiation of an antidumping proceeding under 19 U.S.C. § 160(c) (1979) (Current version at 19 U.S.C. § 1673a(b)(1)). The Royal Administrator typewriter was included, among others, as the object of the petition. On May 18, 1979, the Treasury Department published a notice of the initiation of an investigation of whether the typewriters were being sold at less than their fair value (44 Fed.Reg. 29191). On November 15, 1979, it published notice of an extension of the investigation (44 Fed.Reg. 65853). On December 28, 1979, it then issued a notice of the withholding of the appraisement of the typewriters based on its tentative determination that they were being sold at less than their fair value. (45 Fed.Reg. 1220).

Thereafter, on January 1, 1980, the new antidumping law (contained in the Trade Agreements Act of 1979, Pub.L. 96–39) became effective; on January 2, 1980, the Treasury Department's responsibility for the administration of that law was transferred to the Commerce Department by the President's Reorganization Plan No. 3 of 1979 (44 Fed.Reg. 69275 and 45 Fed.Reg. 9931) and on January 4, 1980, the Commerce Department referred the proceeding to The International Trade Commission for determination under 19 U.S.C. § 1673d (Section 735 of the Tariff Act of 1930, as added by Title I of the Trade Agreements Act of 1979) of whether a United States industry was being materially injured. Notice of the injury investigation was published by the ITC on January 17, 1980 (45 Fed.Reg. 3401.)

On March 21, 1980, the Department of Commerce published a final determination under 19 U.S.C. § 1673d(a) that the typewriters involved were being sold at less than fair value (45 Fed.Reg. 28416) and the ITC followed on May 7, 1980 with the publication of its final determination under 19 U.S.C. § 1673d(b), that the sales were causing material injury to an industry in the United States. (45 Fed.Reg. 30186).

The final determination of sales at less than fair value was directed to portable electric typewriters and made plain from its statement of reasons that the product of Silver Seiko, the manufacturer of the typewriter at issue, was included.

The final injury determination by the ITC specifically concluded that "[T]he Royal Administrator . . . . is appropriately considered a portable electric typewriter for the purposes of this investigation."

On May 9, 1980, the Department of Commerce published a Final Antidumping Duty Order (45 Fed.Reg. 30613) under the authority of 19 U.S.C. § 1673e.[7] It directed Customs officers to assess antidumping duty against the merchandise subject to the previous withholding of appraisement and all future entries and to require the deposit of estimated antidumping duties on all the affected entries. The order was directed to

---

**6.** On December 19, 1980, defendants filed a letter requested by the Court (discussed *infra* as Court Exhibit 1) and a letter-brief. Plaintiff filed a letter-brief with attachments on December 23, 1980.

**7.** See Note 5, *supra.*

portable electric typewriters and defined the term by reference to item 676.0510 of the Tariff Schedules of the United States, a statistical extension (for portable typewriters) of the TSUS item 676.05, covering *all* typewriters.[8] The description in the final order used the general language by which the subject of the administrative proceeding had been identified from the inception of the investigation.

Plaintiff had steadfastly argued before the Commerce Department and the ITC that the Royal Administrator was not a portable typewriter. During the pendency of the investigations it assertedly received some encouragement on that point from the National Import Advisory specialist of the Customs Service and had been permitted by the Customs Service to make a few of its entries under a non-portable statistical number.

Following the publication of the antidumping duty order, plaintiff continued to press its cause before the Department of Commerce in a 27 page letter of May 30, 1980.[9] The Department of Commerce forwarded that letter with a request for the advice of the Customs Service as to the proper classification, *inter alia*, of the Royal Administrator, and stated that "[i]f the models in question are classified under item 676.0540, TSUSA, [non-portable] they would not be within the scope of our Antidumping Duty Order and would not be subject to antidumping duties." [10]

On August 7, 1980, the Customs Service sent its "determination" to the Department of Commerce including "holdings" to the effect that the Royal Administrator was an electric typewriter within statistical item 676.0540 [non-portable] and was therefore removed from the scope of the Antidumping order and the finding of material injury.[11]

Thereafter, the Commerce Department evidently took the view that the Royal Administrator was *included* in its final antidumping duty order and, according to plaintiff, was about to issue a directive to that effect which Commerce termed "clarifying", but which plaintiff believed would place it under the antidumping order for the first time.[12]

In an affidavit accompanying defendant's motion for summary judgment, the Commerce Department takes the position that it has the responsibility and the authority to determine whether the Royal Administrator" . . . remains within the scope of the May 9, 1980, antidumping duty order" and has not yet made a determination of its position with respect to that question.[13]

---

8.

| ITEM | STAT. SUFFIX | |
|---|---|---|
| | | Typewriters not incorporating a calculating mechanism: |
| 676.05 | | Non-automatic with hand-operated keyboard ..................... free |
| | | Portable: |
| | 10 | Electric .............. |
| | 30 | Nonelectric ........... |
| | | Other: |
| | 40 | Electric .............. |
| | 60 | Nonelectric ........... |

9. Exhibit S to Intervenor's memorandum.

10. Court Exhibit 1-Letter of undecipherable date from Leonard M. Shambon, Director, Office of Compliance, International Trade Administration, U. S. Department of Commerce to Salvatore E. Caramagno, Director, Classification and Value Division of the Customs Service.

11. Letter from Caramagno to Shambon. Exhibit F to plaintiff's memorandum in support of Motion for Preliminary Injunction and Writ of Mandamus.

12. Affidavit of Michael S. O'Rourke, Esq., attached to plaintiff's application for a temporary restraining order of November 18, 1980.

13. Affidavit of John O. Greenwald, Deputy Assistant Secretary for Import Administration, U. S. Department of Commerce.

Counsel for the government, in oral argument and in a letter-brief filed thereafter, attempted to limit the views expressed in the affidavit to the assertion of a power to "clarify." However, counsel for the government also offered the argument that if a modification changes the scope of a final antidumping duty order to include or exclude merchandise " . . . The order has the effect of a final determination and order" and would be judicially review-

The above brief history demonstrates what appears to be some confusion in the administration of the antidumping law, particularly with regard to the role of the antidumping duty order of 19 U.S.C. § 1673e.[14]

SCM looked to the antidumping duty order as a clear final expression of the result of the previous less than fair value and injury determinations.

Plaintiff looked to the order as an indication that its typewriter was not included therein and further believed that this was the equivalent of not being aggrieved by any final agency determination. Accordingly, it did not commence the action for judicial review provided for in 19 U.S.C. § 1516a(a)(2)(B). Instead, in its view, it pressed the Department of Commerce to confirm the fact that its typewriter had not been included in the order.

The Department of Commerce evidently looked at the order as a malleable medium for expressing its own concept of the result of the previous administrative determinations, or as something within its authority to later modify.

The Customs Service evidently thought that, by virtue of its authority and expertise in matters of classification, (or at least as a result of the request for advice from Commerce) it could influence the interpretation or enforcement of the order.

All these views were mistaken to one degree or another. To a certain extent some confusion is understandable in the early phases of the administration of a law which is complex in its operation, demanding in the coordinated relationship it requires between three independent agencies, and particularly difficult for the way the Department of Commerce is given decisional authority at some stages and denied it at others.

Nevertheless, the statutory scheme, as it bears on this dispute, is clear. The rights of the affected parties, the authority of the agencies, and their relationship are all precisely delineated.

■ To begin with, the issuance of a final antidumping duty *order* is purely a ministerial act. It is *not* the final expression of the administrative *determinations*. The final order is really the first step in the *enforcement* of the consequences mandated

---

able under 19 U.S.C. § 1516a either as a review of a final determination or ". . . in the context of a civil action which contests either an early or a periodic duty determination." [19 U.S.C. § 1673e(c) or 19 U.S.C. § 1675].

This argument first ignores the clear, albeit erroneous, import of the affidavit, and then strains to make judicial review under 19 U.S.C. § 1516a the exclusive vehicle in all cases involving antidumping duties, ignoring the more direct use of 5 U.S.C. § 702 and jurisdiction of 28 U.S.C. § 1581(i) for those aggrievements for which 19 U.S.C. § 1516a is not adequate. See H.R.Rep.No.96–1235, 96th Cong. 2d Sess. 48 (1980), U.S.Code Cong. & Admin.News 1980, 7088. See also, discussion of antidumping duty order in text, *infra*.

14. § 1673e. Assessment of duty

(a) Publication of antidumping duty order.— Within 7 days after being notified by the Commission of an affirmative determination under section 1673(b) of this title, the administering authority shall publish an antidumping duty order which—

(1) directs customs officers to assess an antidumping duty equal to the amount by which the foreign market value of the merchandise exceeds the United States price of the merchandise, within 6 months after the date on which the administering authority receives satisfactory information upon which the assessment may be based, but in no event later than—

(A) 12 months after the end of the annual accounting period of the manufacturer or exporter within which the merchandise is entered, or withdrawn from warehouse, for consumption, or

(B) in the case of merchandise not sold prior to its importation into the United States, 12 months after the end of the annual accounting period of the manufacturer or exporter within which it is sold in the United States to a person who is not the exporter of the merchandise.

(2) includes a description of the class or kind of merchandise to which it applies, in such detail as the administering authority deems necessary, and

(3) requires the deposit of estimated antidumping duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited.

by statute when it has been determined that certain articles are being sold at less than their fair value and are materially injuring a domestic industry. It is the first step in the mandatory assessment of antidumping duty.[15]

■ It follows that plaintiff had no more reason to concentrate on the final order and believe itself unaggrieved than a judgment debtor has to think that a questionable execution removes it from a judgment.[16] It further follows that the final order must express the result of the previous determinations without alterations and neither the Commerce Department, as the administering authority, nor the Customs Service, by exercise of its classification authority, could legally change the results of the less than fair value and injury determinations or modify the facts or legal conclusions on which those determinations depended.

This analysis is supported by the express terms of the statute, which begins in 19 U.S.C. § 1673 with an unambiguous statement that the class or kind of merchandise found to have been sold at less than its fair value and to have materially injured a domestic industry must be subjected to an antidumping duty.[17]

All this points to the final order as a ministerial act which must be accurately and promptly performed so that the assessment of duties may be accomplished.

The modicum of authority given to Commerce in 19 U.S.C. § 1673e(a)(2) to describe the class or kind of merchandise to which the order applies ". . . in such detail as [it] deems necessary . . ." does not permit alteration of the determinations. In practice, what Commerce deems necessary should not be less detailed than the determinations themselves, particularly where the possibility of confusion exists.

---

**15.** The importance placed by the legislature on the speedy and certain assessment of antidumping duties was the controlling reason for the strict terms of Section 736 of the Trade Agreements Act of 1979 (19 U.S.C. § 1673e.)

In its report, the Committee on Ways and Means stated as follows:

The Committee is very dissatisfied with the past record of the Secretary of the Treasury in assessing duties on entries subject to a dumping finding. Unless dumping duties are assessed in a timely fashion, the remedial effect of the law is negated...

.  .  .  .  .

The bill does not contain a provision specifically related to the collection of antidumping duties following an assessment. The Committee expects that its clear intent to expedite the entire antidumping proceedings should be carried out with respect to collection, since to do otherwise would negate the effect of the statute. In this connection, the Committee intends that the Authority shall act vigorously to collect dumping duties, using all means at its disposal to ensure timely collection. The Committee expects the Authority to devote sufficient resources to the collection process to ensure expeditio[u]s payment of antidumping duties.

H.R.Rep.No.96–317, 96th Cong., 1st Sess. 69, 70, 71 (1979).

These sentiments were echoed in the report of the Senate Finance Committee which stated as follows:

. . . [T]he committee intends that antidumping duties be collected expeditiously. This will reduce the uncertainty which prevails during suspension of liquidation for both the importer and the domestic industry. In light of the dismal performance of the Department of the Treasury in assessing special dumping duties in the recent past, the committee considers this time limit on assessment to be an extremely important addition to the law.

S.Rep.No.96–249, 96th Cong., 1st Sess. 76, 77 (1979), U.S.Code Cong. & Admin.News 1979, 381, 462, 463.

**16.** As a ministerial act, the failure of the final order to effectuate a determination adverse to plaintiff, if that was the case, was of no moment. If however, the final order was subjected to the standards required of final administrative *decisions* it would probably be invalid as lacking the necessary clarity. Cf. *ABC Air Freight Co. v. Civil Aeronautics Board*, 391 F.2d 295. (CA2 1968); *Burlington Truck Lines v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

**17.** § 1673. Imposition of antidumping duties

If—

(1) the administering authority determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and

(2) the Commission determines that—

(A) an industry in the United States—

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded, by reason of imports of that merchandise, then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise.

Each stage of the statutory proceeding maintains the scope passed on from the previous stage. Thus, the class or kind of merchandise described in the petition, which becomes the subject of investigation under 19 U.S.C. § 1673a(c)(2), is the subject of the preliminary injury determination of 19 U.S.C. § 1673b, the suspension of liquidation under 19 U.S.C. § 1673b(d), the possible terminations or suspensions of 19 U.S.C. § 1673c, and the final determinations of 19 U.S.C. § 1673d.

■ In those administrative proceedings even if plaintiff believed itself to be an "orange" among "apples", so long as the Department of Commerce and the ITC were considering it to belong to a certain class it remained so for the purpose of the proceedings.[18] The Court has no doubt that the Royal Administrator was included in the administrative investigations from their commencement until their conclusion in final determinations.

■ Following the specific ITC injury determination the only legal significance of the final antidumping duty order for plaintiff was as a signal that the time to bring an action for judicial review of the less than fair value and injury determinations was beginning to run. At that point the aggrievement had occurred by reason of the inclusion of plaintiff's product in the *final determinations*, the *final order* could not do less than effectuate the final determinations,[19] and the statutory remedy was available to contest "any factual findings or legal conclusions" underlying the determinations. 19 U.S.C. § 1516a.

Careful examination of 19 U.S.C. § 1516a(a)(2)[20] discloses that, when unrelat-

18. The court distinguishes between the authority of the Customs Service to classify according to tariff classifications (19 U.S.C. § 1500) and the power of the agencies administering the antidumping law to determine a class or kind of merchandise. The determinations under the antidumping law may properly result in the creation of classes which do not correspond to classifications found in the tariff schedules or may define or modify a known classification in a manner not contemplated or desired by the Customs Service. Within the context of an antidumping proceeding the administering agency, at the proper time, can define the class in its terms.

The Customs Service is placed in a ministerial role by the antidumping law. See, 19 U.S.C. § 1673e(a) and 1673h. See also, Reorganization Plan No. 3 of 1979; Report of the Senate Governmental Affairs Comm. to accompany S.Res. 245, 96th Cong., 1st Sess. 23, 39 (1979). Accordingly, it may not independently modify, directly or indirectly the determinations, their underlying facts, or their enforcement.

The Court does not comment on the possibility of Commerce delegating a role to the Customs Service at a time when, and to the extent that, prior to a *determination*, the class or kind can properly be altered. See generally, *Armstrong Bros. Tool Co. v. United States*, 84 Cust.Ct. ——, C.D. 4848 (1980). After the final determination however, no agencies may review a determination or its underlying facts without specific statutory authority, let alone make modifications. The very strict controls on administrative review of prior determinations, found in 19 U.S.C. § 1675(b), are another good indication that Congress did not want these determinations to remain in a state of flux.

19. Indeed if by some chance the consequences of the less than fair value and injury determinations were not enforced, it would be the petitioner (Intervenor) who would have a traditional mandamus action to compel the appropriate official to perform ministerial acts.

20. § 1516a. Judicial review in countervailing duty and antidumping duty proceedings

  (a) Review of determination.—
  (2) Review of determinations on record.—
  (A) In general.—Within thirty days after the date of publication in the Federal Register of—
  (ii) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B).
an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Customs Court by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.
  (B) Reviewable determinations.—The determinations which may be contested under subparagraph (A) are as follows:
  (i) Final affirmative determinations by the Secretary and by the Commission under section 1303 of this title, or by the administering authority and by the Commission under Section 1671d or 1673d of this title.

ed material is removed and language inserted in the place of relevant alphabetical references the statute would read as follows:

Within thirty days after the date of publication in the Federal Register of—

(ii) an antidumping . . . duty order based upon [final affirmative *determinations* by the Department of Commerce that merchandise which was the subject of the investigation is being sold at less than its fair value or by the International Trade Commission that the merchandise is causing material injury to an industry in the United States]

an interested party . . . may commence an action in the Court of International Trade . . . *contesting any factual findings or legal conclusions upon which the determination is based.* [emphasis supplied.]

█ It is plain that the action is directed at the basis of the final *determinations* and not at the final *order.* In view of the fact that plaintiff's actual aggrievement was inclusion in the final determinations, it should have brought an action under 19 U.S.C. § 1516a(a)(2). It follows that a later administrative action, if taken in conformity with those final determinations, could not represent a new aggrievement of plaintiff. Thus, if the Department of Commerce now wishes to clarify and perfect the final order to dispel the confusion which has arisen, it may do so.

The analysis of the facts and law requires the Court to dismiss plaintiff's action for lack of jurisdiction, the time within which to bring its action having expired thirty (30) days after publication of the antidumping duty order.

The court notes that the dismissal is not grounded on the basis urged by the defendant, i. e., that the action under 19 U.S.C. § 1516a is the *exclusive* remedy for all grievances arising from the administration of the antidumping law. For *this* grievance the action under 19 U.S.C. § 1516a was an adequate remedy. However, it is not difficult to foresee that certain grievances may arise between the final determinations and

the administrative review of the final determinations, under 19 U.S.C. § 1675 for which 19 U.S.C. § 1516a would be manifestly inadequate. In those instances, the right of action under 5 U.S.C. § 702 and the Court's broad residual jurisdiction under 28 U.S.C. § 1581(i) will serve to maintain the comprehensive system of judicial review established by the legislature.

For the reasons expressed above, this action is hereby dismissed for lack of jurisdiction.