UST, Inc. and Tsubakimoto Chain Co., Ltd., plaintiffs *v.* United States, defendant

Court No. 81–10–01392

Before Ford, *Judge.*

(Decided July 31, 1985)

*Barnes, Richardson & Colburn (Robert E. Burke* and *David A. Riggle,* of counsel) for the plaintiff.
*Richard K. Williard,* Acting Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch; *Gaylin Soponis,* U.S. Department of Commerce; for the defendant.

Ford, *Judge:* This action contests the "Final Results of Administrative Review of Antidumping Finding" involving roller chain, other than bicycle, from Japan (46 Fed. Reg. 44488, September 4, 1981), conducted by the U.S. Department of Commerce (Commerce) pursuant to section 751a of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a). Before the Court is plaintiffs' (UST) motion, under Rule 56.1 for Judgment Upon Agency Record. Defendant opposes said motion and seeks affirmance of the administrative review under challenge. Jurisdiction is pursuant to 19 U.S.C. § 1516a and 28 U.S.C. § 1581c.

In accordance with this Court's order of remand in *UST, Inc. and Tusbakimoto Chain Company Ltd.* v. *United States,* 8 CIT 82, Slip Op. 84–91 (August 3, 1984), the administrative record of this case was amended with the addition of UST's August 19 and September 18, 1981, submissions to Commerce in the underlying review. UST presently seeks an order amending Commerce's assessment instructions to the Customs Service to include the chain types enumerated in UST's August 19, 1981 submissions. These chain types were subsequently determined by Commerce not to have been sold at less than fair value during the relevant period.

Defendant maintains that, insofar as Slip Op. 84–91 denied defendant's motion for review under Rule 56.1, a complete review of the issues presented in the administrative record is warranted. To amend the assessment instructions in the manner sought by UST would, defendant argues, grant UST's ultimate relief without a full review upon the record as mandated by statute.

The principal issue in this case is whether Commerce erred in refusing to consider UST's submissions of August 19 and September 18, 1981, in its administrative review of the antidumping finding on roller chain, other than bicycle, from Japan. In remanding this matter to Commerce to amend the administrative record with UST's

submissions, the Court, in Slip Op. 84–91, acknowledged the existence of a definitional dispute between the parties on the scope of the review. The Court therefore supplemented the administrative record prior to its full review thereof. Slip Op. 84–91 was not a final, appealable order and did not resolve the substantive issue before the Court. To the extent that certain factual findings were made in that decision, those findings must be discounted as they were reached without a full review upon the record and without affording the defendant an opportunity to present its argument on the merits. Commerce having completed the administrative record, the Court now considers whether the Commerce determination not to consider data contained in UST's submissions in reaching its final results of administrative review was "unsupported by substantial evidence on the record, or otherwise not in accordance with law", pursuant to 19 U.S.C. § 1516a(b)(1)(B).

The background of this case originates with the publication, on April 12, 1973, of Treasury Decision 73–100 (38 Fed. Reg. 9226), an antidumping finding with respect to roller chain, other than bicycle, from Japan. In this decision, as well as previous publications, including the original Antidumping Proceeding Notice (37 Fed. Reg. 3770, Feb. 19, 1972), the Withholding of Appraisement Notice (37 Fed. Reg. 17768, Aug. 31, 1972), the Notice of Determination of Sales at Less than Fair Value (37 Fed. Reg. 25859, Dec. 5, 1972), and the Notice of Determination of Injury (38 Fed. Reg. 6241, March 7, 1973), the subject mechandise was simply described as "roller chain, other than bicycle, from Japan."

Following the transfer of authority for administering the antidumping law from the Secretary of the Treasury, on March 28, 1980, Commerce undertook an administrative review of T.D. 73–100, pursuant to 19 U.S.C. § 1675 (hereafter section 751 review). On March 30, 1980, UST requested that Commerce issue a ruling on the scope of the finding on "roller chain, other than bicycle, from Japan" (A.R. 001). In this request, UST asserted that only chain precisely set forth in American National Standards Institute standards B.29.1 and B.29.3 were "roller chain" for purposes of the antidumping finding. UST claimed that there was no consistent definition of roller chain because the petitioner's definition changed during the various stages of the original investigation and that, as only two chain types were consistent throughout the definitions, only those types constituted roller chain for purposes of the finding.

In May of 1980, Commerce sent questionnaires to UST requesting information on entries of "roller chain other than bicycle, from Japan" for the period April 1, 1979 through March 31, 1980, for the required 751 review (A.R. 588–9). UST's responses to this request were incomplete in that data were not submitted on all types of roller chain. For chain that was reported, UST provided only price list information, rather than sale-by-sale data as required by the questionnaire (A.R. 356). Further, the responses were inconsistent,

as UST reported on some chain it alleged was not covered by the finding, while not reporting on other chain of the same class (A.R. 546). Commerce became aware of UST's failure to submit proper data on all roller chain during discussions regarding the nonconfidential summaries submitted on June 25, 1980 (A.R. 546). Thereafter, and repeatedly during the course of the section 751 review, Commerce personnel indicated to UST that at least "all chains containing a roller should be reported" (A.R. 540; A.R. 545; 543–4). Despite these requests, UST did not report on certain chain although it was aware that such non-reporting would subject such chain to automatic margins determined on the basis of best information otherwise available (A.R. 532, 652).

On March 17, 1981, Commerce published its preliminary determination, in which the scope of the review was defined as follows:

> Imports covered by this review are shipments of roller chain, other than bicycle, currently classifiable under various provisions of the Tariff Schedules of the United States Annotated (TSUSA), ranging from item numbers 652.1300 through 652.3800.

The preliminary determination also stated that the best information was used to establish dumping liability where company-supplied information was inadequate or no information was received. (A.R. 625)

Commerce sent UST a memorandum on the scope of the dumping order on July 1, 1981 (A.R. 521–524). This memorandum established that, consistent with the questionnaire request for data on all "roller chain, other than bicycle," the scope of the finding (T.D. 73–100) "includes all roller chain in the generic sense" (A.R. 521). The memorandum explained that the product description was written to cover an entire class or kind of merchandise, rather than just a few types of roller chain. It further provided four general definitions to be used in determining the applicability of the dumping finding to particular types of chain. While UST had sought a ruling that only the two standard types of chain be included in the finding, Commerce viewed this request as an unacceptable attempt to have Commerce rewrite the product description long after the original finding had been made (A.R. 523).

Commerce officials had agreed to accept additional data, and to issue appropriate instructions to Customs, "for those chain models for which the Department believes that the failure to submit such data was due to confusion concerning the definitional scope of the finding" (A.R. 535). Commerce thus initially accepted the UST submission of August 19, 1981 in order to decide which chains were unreported because of a misunderstanding concerning the definition (A.R. 536). The UST submission had been due by August 15, 1981.

Commerce did not utilize the data submitted on August 19, 1981. In the Final Results, published September 4, 1981, Commerce stated:

The Department will not accept additional data unless a firm can show that the failure to submit such data was due solely to a reasonable misunderstanding of the definitional scope of the finding.

A dumping duty of 2 percent, based on best information available, was assessed on chains manufactured and imported by UST for which it had failed to report data in timely fashion. The notice also contained a more particular description of the scope of the finding, although this description was substantially the same as the description provided UST on July 1, 1981.

On September 18, 1981, UST submitted revised information on certain chains, consisting of the same information previously submitted on August 19, except that data for chains that had been determined not to fall within the scope of the finding was omitted (A.R. 931–946).

By letter of October 1, 1981, addressed to UST's counsel, Commerce rejected the data submitted on September 18, 1981, stating its position that—

> . . . we will not accept additional data for analysis unless a firm can show that the failure to submit such data was the result of a reasonable misunderstanding concerning the definitional scope of the finding. I do not believe that your client's failure to submit the data contained in your September 18, 1981 letter during the period provided by the Department for response to our dumping questionnaire was due to a reasonable misunderstanding of the definitional scope of the finding (A.R. 543–4).

UST instituted the present action on October 5, 1981, challenging the alleged failure of Commerce to clarify the definitional scope of the 1973 dumping finding (T.D. 73–100) and Commerce's refusal to accept the additional data submitted by UST on September 18, 1981. No action was taken in this case until April 5, 1984, when UST filed a motion for remand to Commerce for completion of the administrative record. Defendant responded to this motion with affirmative defenses, a cross-motion for submission of the case pursuant to Rule 56.1, and also requested additional time for briefing should its cross-motion be granted. UST opposed defendant's cross-motion, claiming a significant portion of the administrative record had been excluded from the official record before the Court. As previously noted, Slip Op. 84–91 granted UST's motion for remand and ordered Commerce to amend UST's submissions to the administrative record. This having been done, the remaining issue to review upon the agency record is whether Commerce properly rejected UST's submissions of August 19 and September 18, 1981 as untimely.

Under section 751(a), Commerce, as the administering authority, is required to conduct annual reviews of antidumping findings. In conducting the review of T.D. 73–100 on "roller chain, other than bicycle, from Japan", Commerce requested pertinent information from UST and other manufacturers and importers to assist in

determining whether the involved merchandise remained subject to dumping duties. In order to comply with the requirements of the statute, Commerce provides a specified period in which to respond to the questionnaires. After this period expires, Commerce must refuse to consider information untimely submitted and instead rely on the "best information otherwise available". 19 U.S.C. § 1677(e). An exception to this rule exists if a respondent can show that the failure to submit such data was due solely to a reasonable misunderstanding of the definitional scope of the finding. In such a situation, Commerce will accept additional data.

As in the present review, Commerce is routinely asked for clarification of the scope of the finding. However, while Commerce may interpert the scope of a finding, it cannot alter or amend that scope. Each stage of the statutory proceeding maintains the scope passed on from the previous stage. See *Royal Business Machines, Inc.* v. *United States,* 1 CIT 80, 507 F. Supp. 1007 (1980), *aff'd,* 669 F.2d 692 (1982). The scope of the finding on "roller chain, other than bicycle, from Japan" was thus established by the description of the class or kind of merchandise contained in T.D. 73–100, the original antidumping finding published by the Treasury Department on April 12, 1973. There is nothing in the record of this case to indicate that the limits on the definition requested by UST were ever intended by the Treasury Department.

19 U.S.C. § 1677e(b) provides:

(b) Determinations to be made on best information available. In making their determinations under this title [19 USCS § § 1671 et seq.], the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

The above provision was described in more practical terms in *At lantic Sugar, Ltd., et al.* v. *United States,* 744 F.2d 1556 (1984), where the Court of Appeals for the Federal Circuit stated, at 1560:

In short, one may view the best information rule * * * as an investigative tool, which that agency may wield as an informal club over recalcitrant parties or persons whose failure to cooperate may work against their best interest.

In reviewing the complete administrative record before the Court in this case, it becomes apparent that, while the parties disagreed on the definitional scope of the finding, UST certainly understood Commerce's position on the scope of the finding. Indeed, from the inception of this review, the administrative record is replete with correspondence and references to discussions between UST and Commerce on this particular matter. Commerce's position remained consistent and was reiterated throughout the course of this colloquy. The scope of the finding, established in the 1973 Treasury decision,

could not be rewritten. The product description in the roller chain finding was written to cover an entire class or kind of merchandise, not a few types of the general class or kind. UST did not request a ruling on whether certain chains were within the scope of the finding; rather, UST requested a ruling that only two standard types of chain were included in the scope of the finding. This could not be done, and UST was fully apprised of the Commerce position on this subject. At the very least, by July 1, 1981, the date of Commerce's memorandum on the scope of the dumping order, UST was aware that Commerce was requesting information on particular chain types on which UST had not reported and which would be covered by the upcoming dumping finding. When the requested information was not forthcoming, Commerce had no choice but to proceed with its review and make its findings using the best information available. Commerce was therefore correct in rejecting UST's submissions of August 19 and September 18, 1981, as untimely.

In reaching this decision, the Court is acutely aware that section 751 reviews are conducted annually and must be completed within specific time-frames. The procedures involved in conducting these reviews make it imperative the requested information be submitted within a period that allows Commerce sufficient time for adequate analysis and comment while still meeting statutory deadlines. This particular review took over eighteen months to complete. That UST requested clarification on the scope of the finding does not lessen its obligation to provide Commerce with the requested information in a timely manner. Examination of the record clearly indicates Commerce complied with the appropriate procedural guidelines and UST was given every opportunity to respond and participate in the review in a meaningful manner.

Accordingly, the Court finds the determination of Commerce not to consider the data contained in UST's submissions of August 19 and September 18, 1981, to be fully supported by substantial evidence on the record and otherwise in accordance with law. The final results of the administrative review on roller chain, other than bicycle, from Japan (46 Fed. Reg. 44488, September 4, 1981) are therefore affirmed, and this action is hereby dismissed. Judgment will be so entered.