NTN BEARING CORP. OF AMERICA, American NTN Bearing Mfg. Corp. and NTN Toyo Bearing Co., Ltd., Plaintiffs,

v.

UNITED STATES and Barbara H. Franklin, Secretary, United States Department of Commerce, Defendants,

The Torrington Company, Defendant–Intervenor.

Court No. 89–06–00350.

United States Court of International Trade.

Aug. 19, 1992.

Barnes, Richardson & Colburn, Donald J. Unger and Brian F. Walsh, Chicago, Ill., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (A. David Lafer, Sr. Trial Atty., of counsel), Craig R. Giesze, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendants.

Stewart and Stewart, Eugene L. Stewart, Terrence P. Stewart, James R. Cannon, Jr. and Patrick J. McDonough, Washington, D.C., for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

On March 31, 1988, The Torrington Company ("Torrington") filed a petition with Commerce, requesting the imposition of antidumping duties upon imports of all antifriction bearings, other than tapered roller bearings, and parts thereof, from the Federal Republic of Germany, Sweden, France, Italy, the United Kingdom, Japan, Romania, Singapore and Thailand. General Administrative Record ("GAR") (Pub.) Doc. 1. On May 3, 1989, the final results of the investigation of dumping findings from Japan were issued. *Final Determinations of Sales at Less Than Fair Value; Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan* ("Final Results"), 54 Fed.Reg. 19,-101 (1989).

On February 28, 1991, this Court affirmed the ITA's Final Results as to standing and the initiation of the cost of production investigation, Counts 1 and 3 of plaintiffs' complaint. *NTN Bearing Corp. of America v. United States*, 15 CIT ——, 757 F.Supp. 1425 (1991), *aff'd*, 972 F.2d 1355, No. 91–1294, 1992 U.S.App. LEXIS 15758 (Fed.Cir. June 30, 1992). This action, brought by NTN Bearing Corp. of America, American NTN Bearing Mfg. Corp. and NTN Toyo Bearing Co., Ltd. (collectively "NTN"), also challenges the Department of Commerce's final results. The issue in this case is limited to Count 2 of the complaint, that being the scope of the agency's investigation.

## DISCUSSION

Pursuant to the Tariff Act of 1930, in reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *The Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir.1990).

*Timeliness*

Defendants claim that plaintiffs' motion for judgment on the agency record was untimely filed and therefore is barred. They claim that by an order, dated April 3, 1990, this Court required that "counsel for plaintiffs and plaintiff-intervenors, if any, shall file and serve their principal briefs, pursuant to Rule 56.1, concerning ... [s]cope [i]ssues ... within sixty (60) days after April 11, 1990." *NTN Bearing Corp. v. United States*, Court No. 89–06–00350 (Order dated April 3, 1990) (emphasis omitted). Since over two years have elapsed from the date of the order, Commerce claims that NTN is now barred from pursuing their judicial remedies before this Court.

Commerce, however, fails to consider this Court's order of May 8, 1992 dismissing all counts not on appeal in this case with the exception of the issue at hand; that being, the scope of the investigation and the inclusion of parts not sold in the United States. *NTN Bearing Corp. v. United States*, Court No. 89–06–00350 (Order dated May 8, 1992). The court's order

stated that *"NTN Bearing Corp. v. United States,* is to remain on the court's docket limited to the issue of inclusion of parts not sold in the U.S. as alleged in Count II of NTN's complaint." *Id.* On March 2, 1992, this Court also ordered that any dispositive motions concerning the issues raised in pleadings, or any other issues, shall be filed by April 27, 1992 and any responses to these motions shall be filed in accordance with the Rules of this Court. *NTN Bearing Corp. v. United States,* Court No. 89-06-00350 (Order dated March 2, 1992). Plaintiffs' motion was indeed filed on April 27, 1992. Therefore, plaintiffs' motion was timely filed.

*Scope of Determination*

We now turn to the principal issue in this case which is the scope of the investigation. Plaintiffs claim that the Department of Commerce failed to determine the scope of its investigation in this case and specifically whether parts and components were included therein. Consequently, they claim that Commerce erroneously included bearing parts in its determination.

NTN's allegations are misplaced because the petition unambiguously covers antifriction bearings and parts. This court has repeatedly held that Commerce has inherent authority to define the scope of an antidumping duty investigation. *See NTN Bearing Corp. of America v. United States,* 14 CIT ——, ——, 747 F.Supp. 726, 731 (1990); *see also, Diversified Prods. Corp. v. United States,* 6 CIT 155, 159, 572 F.Supp. 883, 887 (1983); *Royal Business Machines, Inc. v. United States,* 1 CIT 80, 507 F.Supp. 1007 (1980), *aff'd,* 669 F.2d 692 (1982). To determine whether a particular class or kind of foreign merchandise falls within the scope of an investigation, Commerce examines the description of the merchandise contained in the petition. *See Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 1027, 700 F.Supp. 538, 541 (1988), *aff'd,* 898 F.2d 1577 (Fed.Cir.1990); *Royal Business Machines,* 1 CIT at 87, 507 F.Supp. at 1014. The determination "as to whether a product is covered by an antidumping investigation is one which the ITA must make with ample deference to the intent of the petition." *The Torrington Co. v. United States,* 16 CIT ——, ——, 786 F.Supp. 1021, 1026 (1992).

The petition in this case expressly provides that "the merchandise covered by this petition consists of all ground antifriction bearings and *all parts* thereof both finished and unfinished with the exception of tapered roller bearings." GAR (Pub.) Doc. 1 at 13 (emphasis added). When a petition is unambiguous on its face, then the Court must look to the plain meaning of the language to determine the scope of an investigation. Thus, the scope of Commerce's investigation in this case includes antifriction bearings *and* parts.

Additionally, NTN claims that there is no rational basis for Commerce's inclusion in its determination of articles not sold in the United States. Plaintiffs cite 19 U.S.C. § 1673(1) (1988) which states that an antidumping duty order may be issued only if a class or kind of "foreign merchandise is being, or is likely to be, sold ... in the United States at less than its fair value." NTN claims that in this case the imported raw material parts were not sold in the United States and therefore could not be the subject of dumping. Plaintiffs claim that they transferred the parts in question to their related party U.S. subsidiary which in turn first assembled the parts into a finished bearing in the United States and then made a sale of a finished antifriction bearing to an unrelated U.S. party. Therefore, they argue that these bearing parts should not be subject to dumping duties.

This Court has recognized Commerce's authority to include parts within the scope of its investigation, thereby subjecting them to dumping duties. *See NTN Bearing Corp.,* 14 CIT ——, 747 F.Supp. 726; *see also Gold Star Co. v. United States,* 12 CIT 707, 710-11, 692 F.Supp. 1382, 1385 (1988), *aff'd sub nom., Samsung Elecs. Co. v. United States,* 873 F.2d 1427 (Fed.Cir. 1989). These component parts have no independent application other than to be combined and further refined into completed roller bearings. *NTN Bearing Corp.,* 14 CIT at ——, 747 F.Supp. at 732.

In *NTN Bearing Corp.*, the court explicitly stated that when "pre-fabricated components are imported for the exclusive purpose of finishing into a product that *would* be subject to a dumping order, thereby escaping dumping penalties, then the components are properly within the scope of the investigation and subsequent order." *Id.* (emphasis in original).

If the Court were to allow separate importations of component parts to a related party for subsequent assembly into a finished product, "the domestic industry would continue to suffer the injurious consequences of dumped goods." *Gold Star Co.*, 12 CIT at 711, 692 F.Supp. at 1385. Plaintiffs, in this case, are apparently trying to circumvent the trade laws. Congress has attempted to thwart importers' circumvention strategies by sending "a clear message to foreign producers and trading partners that we will actively seek to prevent circumvention of our trade laws, and thereby decrease the incentive foreign producers might have to 'finesse' their way around our trade laws, in order to engage in recognized unfair trade practices." *NTN Bearing Corp.*, 14 CIT at ——, 747 F.Supp. at 731 (citing S.Rep. No. 71, 100th Cong., 1st Sess. 135 (1987)). It is apparent to this Court that NTN is attempting to circumvent the trade laws and this Court cannot encourage their actions. Therefore, this Court holds that Commerce properly included the bearing parts at issue within the scope of the determination.

*Commerce's Margin Calculations*

■ Alternatively, NTN challenges Commerce's dumping margin calculations. In its final determination, Commerce included within the scope of that determination parts and components, manufactured by NTN in Japan and exported to the United States, as exporter's sales price transactions. *Final Results* at 19,101. Commerce, however, excluded NTN's parts from the agency's dumping margin calculations. *Final Determinations of Sales at Less than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany* ("Antifriction Bear-

ings from Germany"), 54 Fed.Reg. 18,992, 19,028–29 (1989). NTN claims that since Commerce excluded the parts from its calculations, it should have excluded parts from the determination altogether.

Commerce was concerned that their approach could rely on an analysis of sales of merchandise not covered by the proceedings. Commerce explained that where costs incurred in adding value in the United States were significant or differed significantly from similar costs that would have been incurred in the home market, not deducting U.S. value added could skew the dumping calculations. Therefore, for purposes of the final determinations, Commerce excluded from its calculations all ESP sales of bearings and parts with value added in the United States. *Antifriction Bearings from Germany*, 54 Fed.Reg. at 19,028–29. Commerce claims that the fact that they excluded ESP value-added sales from its calculations does not mean that the imported merchandise involved in such sales is excluded from the scope of these proceedings. *Id.*

■ It is well-established that Commerce possesses tremendous discretion when selecting its methodology. *GMN Georg Muller Nurnberg AG v. United States*, 15 CIT ——, ——, 763 F.Supp. 607, 612 (1991); *Mitsubishi Elec. Corp.*, 12 CIT 1025, 1050, 700 F.Supp. 538, 558; *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 404, 636 F.Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (Fed.Cir.1987). Furthermore, when Commerce's selection is reasonable and its reasoning is fully explained at the administrative level, then its selection will be upheld by this Court. Contrary to NTN's contentions, Commerce fully explained its methodology at the administrative level as set forth in *Final Determinations of Sales at Less than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany*, 54 Fed.Reg. 18,992, 19,028–29 (1989), and this Court finds that explanation reasonable and in accordance with law.

## CONCLUSION

In accordance with the foregoing opinion, plaintiffs' motion was timely filed, and their motion is denied in all respects. The petition in this case unambiguously states that the scope of the investigation at issue includes antifriction bearings *and* parts. Furthermore, defendants reasonably explained their methodology at the administrative level which was in accordance with law. Therefore, Commerce's determination as to Count 2 of plaintiffs' complaint is affirmed.