KOYO SEIKO CO., LTD. and Koyo Corporation of U.S.A., Plaintiffs,

v.

UNITED STATES, Defendant,

and

The Torrington Company, Defendant–Intervenor.

Court No. 92–09–00643.

United States Court of International Trade.

Oct. 4, 1993.

Powell, Goldstein, Frazer, & Murphy, Peter O. Suchman, Neil R. Ellis, Robert Torresen, T. George Davis, Jr. and Robert A. Calaff, Washington, DC, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel: Stephen J. Claeys, Atty.–Advisor, Office of the Chief Counsel for Import Adm'n., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Geert De Prest, Lane S.

Hurewitz and Olufemi A. Areola, Washington, DC, for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo"), move pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record contesting the Department of Commerce, International Trade Administration's ("Commerce") final scope ruling issued on August 25, 1992, in which Commerce concluded that Koyo's roller bearing model 15BM2110 was a cylindrical roller bearing falling within the scope of the antidumping order on antifriction bearings from Japan. Administrative Record ("AR") (Pub.) Doc. 10.

On March 31, 1988, The Torrington Company ("Torrington") filed a petition with Commerce seeking the imposition of antidumping duties on antifriction bearings from Japan and other countries. AR (Pub.) Doc. 1. Among the merchandise included in the petition were cylindrical roller bearings and needle roller bearings. *See id.* at 17–18. In its petition Torrington differentiated between cylindrical roller bearings and needle roller bearings by noting that the latter "are a type of cylindrical bearing, distinguished by a comparatively small diameter and a high ratio of length to diameter. Generally a ratio of length to diameter of 2.5 to one identifies the roller as a needle roller." *Id.* at 18.

On November 9, 1988, Commerce issued a preliminary determination that antifriction bearings from Japan were being, or were likely to be, sold in the United States at less than fair value. *Preliminary Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan,* 53 Fed.Reg. 45,343 (1988). In May 1989, the International Trade Commission ("ITC") concluded that sales of needle roller bearings did not cause, nor threaten to cause, injury to the domestic antifriction bearing industry. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof, From The Federal Republic of Germany, France, Italy, Japan, Romania, Sing-apore, Sweden, Thailand and the United Kingdom* ("ITC Final Determination"), Inv. Nos. 303–TA–19–20 (Final), Inv. Nos. 731–TA–391–399 (Final), USITC Pub. 2185 (1989). The ITC stated that cylindrical roller bearings, however, were causing injury.

The ITC defined cylindrical and needle roller bearings as follows:

> *Cylindrical roller bearings.*—Cylindrical roller bearings utilize straight cylinder-shaped rollers which are approximately equal in length and diameter. These bearings are designed primarily for carrying heavy radial loads—loads that exceed the capacities of radial ball bearings of comparable sizes. These bearings also have the highest speed capability of any type of roller bearing.

> *Needle roller bearings.*—Needle roller bearings are similar in appearance to cylindrical roller bearings. However, needle roller bearings have a much smaller diameter-to-length ratio. Often the length of a needle roller bearing is at least four times greater than its diameter. Since these bearings are fairly thin, they are very useful when space conservation is of primary importance. These bearings are also useful in slow speed applications.

*Id.* at A–7, A–8.

On May 15, 1989, Commerce issued its antidumping duty order on antifriction bearings from Japan excluding needle roller bearings. *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan,* 54 Fed.Reg. 20,904 (1989)

On July 6, 1992, Commerce initiated an administrative review of the outstanding antidumping orders on antifriction bearings from Japan (as well as from other countries), covering the period from May 1, 1991 through April 30, 1992. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof; Initiation of Antidumping Administrative Reviews and Request for Revocation of Order (in Part),* 57 Fed.Reg. 29,700 (1992). Subsequent to this, Koyo requested clarification of the scope of the antidumping order on antifriction bearings from Japan, and specifically requested that Koyo's

needle roller bearings fall outside the scope of the antidumping order. AR (Pub.) Doc. 8.

Commerce rejected Koyo's request relying on an earlier final determination which involved a request by FAG Kugelfischer Georg Schaefer KGaA ("FAG") for exclusion of certain engine shaft bearings. AR (Pub.) Doc. 7. In that scope ruling, Commerce concluded that the four-to-one length-to-diameter ratio was dispositive in determining whether a bearing is defined as a needle roller bearing. *Id.* at 9. Since Koyo's needle roller bearing model 15BM2110 did not meet the four-to-one length-to-diameter ratio articulated in the FAG scope ruling, Commerce ruled that the bearing was a cylindrical roller bearing falling within the scope of the antidumping order. AR (Pub.) Doc. 10 at 3. Commerce noted that "the ratio of 4 to 1, as selected by the ITC in its final determination, is the dispositive ratio in defining the physical characteristics of a needle roller bearing." *Id.* Commerce further stated that since "Koyo's bearing does not meet the minimum length-to-diameter ratio of a needle roller bearing, Koyo's Model 15BM2110 is a cylindrical roller bearing which is subject to the antidumping and countervailing duty orders covering antifriction bearings." *Id.* In its determination, Commerce relied heavily on Mark's Mechanical Engineers' Handbook ("*Mark's Handbook*") (6th ed. 1964) to support its finding that the four-to-one length to diameter ratio was dispositive in determining whether a bearing is defined as a needle roller bearing. AR (Pub.) Doc. 7 at 9. Koyo now challenges Commerce's ruling.

### DISCUSSION

■ In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir. 1990).

■ This court has repeatedly held that Commerce has inherent authority to define the scope of an antidumping duty investigation. *See NTN Bearing Corp. of America v. United States,* 14 CIT 623, 627, 747 F.Supp. 726, 731 (1990); *see also, Diversified Prods. Corp. v. United States,* 6 CIT 155, 159, 572 F.Supp. 883, 887 (1983). To determine whether a particular class or kind of foreign merchandise falls within the scope of an investigation, Commerce examines the description of the merchandise contained in the petition. *See Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 1026–27, 1047, 700 F.Supp. 538, 541, 555 (1988), *aff'd,* 898 F.2d 1577 (Fed.Cir.1990); *Royal Business Machines, Inc. v. United States,* 1 CIT 80, 87, 507 F.Supp. 1007, 1014 (1980), *aff'd,* 669 F.2d 692 (Fed.Cir.1982). The determination "as to whether a product is covered by an antidumping investigation is one which the ITA must make with ample deference to the intent of the petition." *Torrington Co. v. United States,* 16 CIT ——, ——, 786 F.Supp. 1021, 1026 (1992). Commerce, however, has the authority not only to define the scope of an antidumping duty investigation, but also to clarify the statement of its scope. *Gold Star Co. v. United States,* 12 CIT 707, 709, 692 F.Supp. 1382, 1384 (1988); *aff'd sub nom, Samsung Elecs. Co. v. United States,* 873 F.2d 1427 (Fed.Cir.1989).

In determining which products are within the scope of an order, Commerce "may consider the petition, the preliminary and final determinations of LTFV and material injury investigations by the ITA and ITC, respectively, any previous ITA notices (*i.e.,* notice of initiation of the LTFV investigation), and available ITC publications." *See American NTN Bearing Mfg. Corp. v. United States,* 14 CIT 320, 322, 739 F.Supp. 1555, 1557–58 (1990); *see also, Nitta Indus. Corp. v. United*

*States,* Slip Op. 92–51, 1992 WL 78429 (April 7, 1992), *aff'd,* 997 F.2d 1459 (Fed.Cir.1993).

In this case, however, reference to these sources do not render this issue dispositive as sources are conflicting. The petition stated that the ratio of length to diameter is 2.5 to one, while the ITC stated that "[o]ften the length of a needle roller bearing is at least four times greater than its diameter." AR (Pub.) Doc. 1; ITC Final Determination at A–8.

■ If the issue is not resolved by reference to the above mentioned sources, then Commerce is to consider the criteria set forth by this court in *Diversified Prods.,* 6 CIT 155, 572 F.Supp. 883. *See* 19 C.F.R. § 353.29(i).[1]

The *Diversified Products* criteria are as follows: (1) general physical characteristics of the merchandise, (2) expectations of the ultimate purchaser, (3) the channels of trade in which the merchandise moves, (4) the ultimate use of the foreign merchandise, and (5) the cost of that merchandise. *Diversified Prods.,* 6 CIT at 162, 572 F.Supp. at 889.

■ The first of the so-called *Diversified Products* criteria is the general physical characteristics of the merchandise. As previously stated, in making its determination Commerce relied on *Mark's Handbook* which clearly stated that needle bearings "have rollers whose length is at least four times the diameter." AR (Pub.) Doc. 12. Commerce further determined that the ultimate use of the merchandise and expectations of the ultimate purchaser are dependent upon the physical characteristics of the bearing. AR (Pub.) Doc. 7 at 10.

Regarding the channels of trade in which the product is sold, Commerce stated that "we have no reason to believe that the various types of bearings are sold in different channels of trade. The major target for all

bearings producers and importers are original equipment manufacturers and distributors." *Id.*

Upon examining the administrative record in this case and all the evidence on the record including the section from *Mark's Handbook,* it is clear to this Court that Commerce was justified in classifying bearing model 15BM2110 as a cylindrical roller bearing.

### CONCLUSION

In accordance with the foregoing opinion, plaintiffs' motion for judgment on the agency record is denied as Commerce was justified in classifying bearing model 15BM2110 as a cylindrical roller bearing within the scope of the antidumping order on antifriction bearings from Japan.

### JUDGMENT

This case having been duly submitted for decision following plaintiffs' motion for judgment on the agency record, and the Court, after due deliberation, having rendered a decision herein; now then, in accordance with said decision, it is hereby

**ORDERED** that plaintiffs' motion is denied as Commerce's classification of bearing model 15BM2110 as a cylindrical roller bearing was supported by substantial evidence on the record; and it is further

**ORDERED** that this case is hereby dismissed.

---

1. According to 19 C.F.R. § 353.29(i),
   [i]n considering whether a particular product is within the class or kind of merchandise described in an existing order, the Secretary will take into account the following:
   (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary and the Commission.

(2) When the above criteria are not dispositive, the Secretary will further consider:
(i) The physical characteristics of the product;
(ii) The expectations of the ultimate purchasers;
(iii) The ultimate use of the product; and
(iv) The channels of trade.