174

INA Walzlager Schaeffler KG and INA Bearing Co., Inc., plaintiffs *v.* United States, defendant, and Torrington Co., defendant-intervenor

Court No. 93–06–00352

(Dated January 19, 1996)

*Arent Fox Kintner Plotkin & Kahn (Stephen L. Gibson* and *Peter L. Sultan)* for plaintiffs.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Velta A. Melnbrencis)* for defendant.
*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, John R. Cannon, Jr., Geert De Prest* and *Patrick J. McDonough)* for defendant-intervenor.

## Opinion

Tsoucalas, *Judge:* Plaintiffs, INA Walzlager Schaeffler KG, a German exporter of antifriction bearings ("AFBs"), and INA Bearing Company, Inc., a United States importer of AFBs from Germany (collectively "INA"), move this Court for judgment upon the agency record pursuant to Rule 56.2 of this Court regarding a final letter ruling issued by the United States Department of Commerce, International Trade Administration ("Commerce"), on June 1, 1993. The administrative determination in issue is entitled *"Final Scope Ruling—Antidumping Duty Orders on Antifriction Bearings (Other Than Tapered Roller Bearings) From Germany: INA Walzlager" ("INA Determination").* See Memorandum of June 1, 1993 from Holly A. Kuga, Director, Office of Antidumping Compliance, Public Record ("P.R.") Document No. 8. In the INA Determination, Commerce found that INA's antifriction bearings having a length-to-diameter ratio of less than 4 to 1 constitute cylindrical roller bearings ("CRBs") and fall within the scope of the antidumping order entitled *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany ("Antidumping Duty Order"),* 54 Fed. Reg. 20,900 (May 15, 1989). *INA Determination* at 1, 6.

By its motion for judgment on the agency record, INA seeks an order reversing Commerce's scope ruling and establishing that INA's Series

NRB needle rollers, Series K needle roller and cage assemblies, Series RNA 49 needle roller bearings, Series HK drawn cup needle roller bearings, and Series AXK axial needle roller and cage assemblies with roller length-to-diameter ratios of less than 4 to 1 (hereafter "subject bearings"), are needle roller bearings ("NRBs") and, therefore, fall outside the scope of the dumping order on CRBs from Germany. *Memorandum of Points and Authorities in Support of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record ("Plaintiffs' Brief")* at 1–2, 25.

## BACKGROUND

On March 31, 1988, The Torrington Company ("Torrington") filed an antidumping duty petition on behalf of the domestic industry producing AFBs other than tapered roller bearings. The petition covered, among other products, cylindrical and needle roller bearings. On April 27, 1988, Commerce initiated an antidumping duty investigation on AFBs from Germany. *Initiation of Antidumping Duty Investigation; Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany,* 53 Fed. Reg. 15,073 (1988). Preliminarily, Commerce determined that AFBs from Germany were being, or were likely to be, sold in the United States at less than fair value ("LTFV"). *Preliminary Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany,* 53 Fed. Reg. 45,353 (1988). Commerce found that the products under investigation constituted five separate classes or kinds of merchandise, *viz.,* (1) ball bearings; (2) spherical roller bearings; (3) cylindrical roller bearings; (4) needle roller bearings; and (5) spherical plain bearings. *Final Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany ("Final Determination"),* 54 Fed. Reg. 18,992, 18,997–19,004 (May 3, 1989). Commerce's final LTFV determination was in the affirmative. *Final Determination,* 54 Fed. Reg. at 18,992.

The International Trade Commission ("ITC") subsequently determined that an industry in the United States is materially injured by reason of LTFV imports of CRBs from Germany. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and The United Kingdom ("ITC Final Determination"),* USITC Pub. 2185 at 3, Inv. Nos. 303–TA–19 and 20 and 731–TA–391–399 (May 1989), 54 Fed. Reg. 21,488 (USITC May 18, 1989) (final). The ITC, however, made a negative determination with respect to NRBs. *ITC Final Determination* at 3, 54 Fed. Reg. at 21,489.

On May 15, 1989, Commerce issued antidumping duty orders covering CRBs, but excluding NRBs. *Antidumping Duty Order,* 54 Fed. Reg. at 20,900.

On June 28, 1993, INA commenced this action and on September 1, 1993, Torrington intervened opposing INA's challenge. On March 10,

1995, the Court granted INA's motion for a preliminary injunction, enjoining the liquidation of INA's entries of Germany-origin AFBs pending disposition of this case.

STANDARD OF REVIEW

The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed. Cir. 1990).

DISCUSSION

INA contends that the INA Determination improperly utilized a "4 to 1" length-to-diameter ratio test to distinguish CRBs from NRBs. *Plaintiffs' Brief* at 1–25. According to INA, Commerce's application of the 4 to 1 test unlawfully expands the scope of the Antidumping Duty Order on AFBs from Germany. *Id.*

Among other arguments, INA contends that although the Court, in *Koyo Seiko Co v. United States,* 17 CIT 1076, 834 F. Supp. 1401 (1993), upheld the 4 to 1 test as applied in another scope ruling, *Koyo Seiko* is distinguishable from the case at bar. Specifically, INA contends that, in *Koyo Seiko,* the Court agreed with Commerce that reference to the petition, the preliminary and final investigation determinations by Commerce and the ITC, and previous Commerce notices such as the notice of the LTFV investigation initiation, as well as ITC publications, did not provide dispositive guidance regarding the scope of the order. *Plaintiffs' Brief* at 23–24. According to INA, the case at bar differs factually from *Koyo Seiko* because the INA Determination states that the ITC's guidance was dispositive. *Id.* at 24. INA maintains that this alleged inconsistency invites a reexamination of the reasoning and sources on which Commerce based the INA scope ruling. *Id.*

The Court has ruled on this issue, upholding Commerce's classification of bearings with a length-to-diameter ratio of less than 4 to 1 as cylindrical roller bearings within the scope of the relevant antidumping duty order on CRBs in both *NTN Bearing Corp. of Am. v. United States,* 19 CIT 1221, 1242, Slip Op. 95–165 at 42 (Oct. 2, 1995), and *Koyo Seiko Co. v. United States,* 17 CIT at 1076, 834 F. Supp. at 1401. The Court of Appeals for the Federal Circuit affirmed this Court's determination in *Koyo Seiko* in a *per curiam* decision dated July 18, 1994.

Moreover, the Court disagrees with INA that Commerce took a different position in this case than it did in the *Koyo Seiko* case *i.e.,* to the

effect that the ITC report was dispositive). The record clearly shows that, to resolve the question in issue, Commerce turned to prior determinations, including the Final Determination on the Request by FAG [FAG Kugelfischer Georg Schaefer KGaA] for Exclusion of Certain Engine Crank Shaft and Engine Main Shaft Pilot Bearings from the Scope of *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany ("FAG Determination")*, P.R. Document No. 2 (December 23, 1991). *See INA Determination* at 3. As explained in the FAG Determination, Commerce followed the first criteria contained in 19 C.F.R. § 353.29(i) (1993),[1] determining "that the length-to-diameter ratio of a bearing is the key factor to distinguish a needle roller bearing from a cylindrical roller bearing." *FAG Determination* at 8. Because the petition stated that NRBs "generally" have a length-to-diameter ratio of 2.5 to 1 and the ITC had stated that needle roller bearings "often" have a length-to-diameter ratio that is "at least" 4 to 1, Commerce did not have a dispositive means of differentiating CRBs from NRBs. *Id.* at 7–8; *INA Determination* at 3. To resolve the inconsistency, Commerce turned to the second set of criteria contained in 19 C.F.R. § 353.29(i)(2), as that standard is espoused in *Diversified Prods. Corp. v. United States*, 6 CIT 155, 572 F. Supp. 883 (1983), *i.e.,* the so-called *"Diversified Products"* criteria.[2] *FAG Determination* at 8–12; *INA Determination* at 3–6; *Final Determination,* 54 Fed. Reg. at 18,998–99.[3] Accordingly, Commerce determined that "the ratio of 4 to 1, as selected by the ITC in its final determination, is the dispositive ratio in defining the physical characteristics of a needle roller bearing." *FAG Determination* at 9.

INA has presented no new arguments here and the products in issue and those involved in *Koyo Seiko,* 17 CIT at 1076, 834 F. Supp. at 1401, are identical, *i.e.,* AFBs with length-to-diameter ratios of less than 4 to 1. In light of the above, INA's challenge fails.

## CONCLUSION

As the subject bearings do not meet the minimum length-to-diameter ratio of needle roller bearings as determined by the ITC and Commerce's 4 to 1 test for distinguishing cylindrical roller bearings from

---

[1] 19 C.F.R. § 353.29(i) states:

(i) *Other scope determinations.* With respect to those scope determinations that are not covered under paragraph (e) through (h) of this section, in considering whether a particular product is within the class or kind of merchandise described in an existing order, the Secretary will take into account the following:
(1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary and the Commission.
(2) When the above criteria are not dispositive, the Secretary will further consider:
(i) The physical characteristics of the product;
(ii) The expectations of the ultimate purchasers;
(iii) The ultimate use of the product; and
(iv) The channels of trade.

[2] The *"Diversified Products"* criteria are the following: (1) general physical characteristics of the merchandise, (2) expectations of the ultimate purchaser, (3) the channels of trade in which the merchandise moves, (4) the ultimate use of the foreign merchandise, and (5) cost of that merchandise. *Diversified Prods.,* 6 CIT at 162, 572 F. Supp. at 889.

[3] Commerce's Final Determination notes the fifth *"Diversified Products"* criteria as "the manner of advertising and display." *Final Determination,* 54 Fed. Reg. at 18,999.

needle roller bearings has received appellate scrutiny and passed muster, the Court sustains Commerce's final scope ruling concerning INA's AFBs and parts. Therefore, the motion at bar is denied, the preliminary injunction granted on March 10, 1995 is dissolved, and this action is dismissed.