**INA WALZLAGER SCHAEFFLER KG and INA Bearing Company, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**The Torrington Company; Federal–Mogul Corporation, Defendant–Intervenors.**

Slip Op. 96–26.

Court No. 93–08–00495.

United States Court of International Trade.

Jan. 29, 1996.

Arent Fox Kintner Plotkin & Kahn (Stephen L. Gibson and Peter L. Sultan), Washington, DC, for plaintiffs.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeffrey M. Telep), of counsel: David Ross, Attorney–Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Washington, DC, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, William A. Fennel, Geert De Prest, and Myron A. Brilliant), Washington, DC, for defendant-intervenor, the Torrington Company.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Larry Hampel and Joseph A. Perna, V), Washington, DC, for defendant-intervenor, Federal–Mogul Corporation.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, INA Walzlager Schaeffler KG, a German exporter of antifriction bearings ("AFBs"), and INA Bearing Company, Inc., a United States importer of AFBs from Germany (collectively "INA"), move this Court for judgment upon the agency record pursuant to Rule 56.2 of this Court challenging certain aspects of the final determination by the United States Department of Commerce, International Trade Administration ("Commerce"), entitled *Final Results of Antidumping Duty Administrative Reviews and Revocation in Part of an Antidumping Duty Order ("Final Results")*, 58 Fed.Reg. 39,729 (July 26, 1993), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 58 Fed. Reg. 42,288 (Aug. 9, 1993); *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 58 Fed.Reg. 51,055 (Sept. 30, 1993); and *Antifriction Bearings (Other*

*Than Tapered Roller Bearings) and Parts Thereof From Japan; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 59 Fed.Reg. 9,469 (Feb. 28, 1994). INA contends that Commerce (1) improperly included plaintiffs' AFBs having a length-to-diameter ratio of less than 4 to 1 within the scope of the antidumping duty order on cylindrical roller bearings ("CRBs") entitled *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany,* 54 Fed.Reg. 20,900 (May 15, 1989) subjecting them to this review, and (2) erroneously treated below-cost sales made only in one and two months, respectively, as sales occurring over an extended period of time.

On August 23, 1993, INA commenced this action. On September 27, 1993, the Court granted The Torrington Company's ("Torrington") motion to intervene in opposition to INA's challenge. On September 30, 1993, the Federal–Mogul Corporation also intervened to oppose INA's challenge.

### Standard of Review

■ The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### Discussion

1. *4 to 1 Roller Length-to-Diameter Ratio Test*

■ INA first argues that Commerce unlawfully applied the "4 to 1" length-to-diame-ter ratio test to distinguish cylindrical roller bearings and needle roller bearings ("NRBs") in defining the scope of bearings subject to the antidumping duty order on Germany-origin antifriction bearings and this third administrative review. *Complaint* at ¶ 6. According to INA, Commerce's application of the 4 to 1 test unlawfully expands the scope of the relevant antidumping duty order. *Id.* at ¶¶ 6, 8.

On December 23, 1991, in response to a request by FAG Kugelfischer Georg Schaefer KGaA for a scope ruling, Commerce held that the 4 to 1 test is applicable for distinguishing CRBs and NRBs. *See Letter to All Interested Parties* from Joseph A. Spetrini, Deputy Assistant Secretary for Compliance, P.R. General Issues, Document No. 11. On September 2, 1992, Commerce informed INA that this standard is applicable in all circumstances for distinguishing between NRBs and CRBs. *Id.*

INA challenged Commerce's June 1, 1993 scope ruling in *INA Walzlager Schaeffler KG and INA Bearing Company, Inc. v. United States,* Court No. 93–06–00352, 1996 WL 19298. However, in that case, the Court upheld Commerce's classification of bearings with a length-to-diameter ratio of less than 4 to 1 as cylindrical roller bearings within the scope of the relevant antidumping duty order on CRBs. *INA Walzlager Schaeffler KG v. United States,* 20 CIT ——, ——, Slip Opinion 96–23 at 6–9, 1996 WL 19298 (Jan. 19, 1996) (citing *Koyo Seiko Co. v. United States,* 17 CIT 1076, 834 F.Supp. 1401 (1993), *aff'd per curiam,* 31 F.3d 1177 (Fed.Cir.1994). *See also NTN Bearing Corp. of Am. v. United States,* 19 CIT ——, ——, 905 F.Supp. 1083, 1100 (1995). Accordingly, the Court upholds Commerce's determination that INA's antifriction bearings having a length-to-diameter ratio of less than 4 to 1 are cylindrical roller bearings within the scope of the relevant antidumping duty order on CRBs from Germany and are subject to this administrative review.

2. *"Extended Period of Time" Rule for Below–Cost Sales*

■ INA also takes issue with Commerce's treatment of sales below cost in few-

er than three months as sales made over "an extended period of time" within the meaning of Section 773b of the Tariff Act of 1930 (the "Act"), as amended, 19 U.S.C. § 1677b(b) (1994).[1] *Memorandum of Points and Authorities in Support of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record ("Plaintiffs' Brief")* at 9–11. INA argues that Commerce unlawfully made an exception in its computer program to the three month minimum period for determining whether sales at less than cost of production ("COP") were made over an extended period of time. *Plaintiffs' Brief* at 9–11. According to INA, language in the computer program cannot override the published determination of Commerce that "extended period of time" means at least three months out of the review period. *Id.* at 9–10.

In the Final Results, Commerce stated:

> Section 773(b)(1) of the Tariff Act [19 U.S.C. § 1677b(b)(1) ] is designed to ensure that below-cost sales are not disregarded if these sales occurred over a short period of time or resulted from normal business practices, such as selling obsolete or end-of-year merchandise at below-cost prices. Below-cost sales in at least three months out of the review period is a reasonable indication that sales below COP are not random, accidental, or sporadic.

*Final Results,* 58 Fed.Reg. at 39,751. The Final Results briefly discussed the rule, not in response to any allegation that Commerce's treatment of sales in fewer than three months was improper but in response to Torrington's claim that the rule should not be applied in certain situations. 58 Fed.Reg. at 39,730. Commerce did not state that it was abandoning the three-month rule. *Id.*

■ This Court has previously upheld Commerce's definition of "an extended period of time" with regard to below-cost sales as consisting of three months. *NTN Bearing Corp. of Am. v. United States,* 19 CIT ——, ——, 881 F.Supp. 595, 602 (1995); *NTN Bearing Corp. of Am. v. United States,* 18

CIT ——, ——, 881 F.Supp. 584, 592 (1994); *NTN Bearing Corp. of Am. v. United States,* 18 CIT ——, ——, 858 F.Supp. 215, 222 (1994). Because 19 U.S.C. § 1677b(b) does not specify what constitutes "an extended period of time," the Court has stated that Congress "has left it up to Commerce to determine what constitutes an extended period of time within the context of a particular proceeding." *NTN Bearing Corp.,* 19 CIT at ——, 881 F.Supp. at 602. Hence, the Court is unmoved by INA's argument. If Commerce's interpretation is reasonable, it must be sustained. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

Commerce has made an exception to the three-month rule in cases where particular models were sold during the period of review ("POR"). For example, in the first administrative review, Commerce noted:

> We made an exception to this threshold requirement when a particular model was sold in less than three months during the POR. In such cases, where sales below cost occurred in each of the months in which such models had been sold, we concluded that these sales of particular models had been made below cost over an extended period of time.

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 31,692, 31,693 (July 11, 1991). Commerce has explained that this exception addresses a shortcoming in the three-month rule, stating:

> [T]he use of only a three month time measurement is incomplete since it excludes models that were sold in only one or two months of the review period. In cases where a model was sold in only one or two months, we determined that below-cost sales took place over an extended period of time if the below-cost sales occurred in one

---

1. In determining foreign market value, Commerce may disregard sales which were made at prices which represent less than the cost of producing the merchandise in question where those sales "(A) have been made within an extended

period of time in substantial quantities, and (B) were not at prices which permit recovery of all costs within a reasonable period of time." 19 U.S.C. § 1677b(b)(1).

or two months respectively. While this test for models sold in two months or less of the review period ensures that an extended period of time test is applied to all sales, it does not penalize the respondent for random, accidental, or sporadic sales below COP.

*Tapered Roller Bearings, and Parts Thereof, Finished and Unfinished, From Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 4,960, 4,965 (Feb. 11, 1992) (Comment 10).[2]

The legislative history of 19 U.S.C. § 1677b(b) indicates that Congress implemented the sales below-cost provision because of a concern that, "[i]n the absence of such a provision, sales made to the United States at less than cost of production could escape the purview of the act if sales in the home market ... are also made at prices which fail to meet the cost of production by an equal or greater amount." H.R.Rep. No. 571, 93rd Cong., 1st Sess. 71 (1973). *See also* S.Rep. No. 1298, 93rd Cong., 2d Sess. 173 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186, 7310. The Court believes that Commerce's exception to the three-month rule in the present case implements Congressional intent with regard to bearings sold in fewer than three months. Moreover, the Court agrees with Commerce that "[i]f one were to accept INA's definition of the term [extended period of time], a party could make a massive amount of below-cost sales during a two month period each year, thereby dramatically skewing its margins, and Commerce would be helpless to disregard such sales." *Defen-*

*dant's Memorandum in Opposition to the Motion of INA Walzlager Schaeffler KG and INA Bearing Co., Inc. for Judgment Upon the Agency Record* at 11 n. 6. As Commerce's exception to the three month rule has a reasonable basis, it is entitled to deference.

In sum, Commerce's interpretation of "extended period of time," in this particular proceeding, constituted a reasonable exercise of discretion in determining when to disregard below-cost sales pursuant to 19 U.S.C. § 1677b(b).

*Conclusion*

To recapitulate, Commerce's 4 to 1 test for distinguishing cylindrical roller bearings and needle roller bearings has been judicially approved. In addition, Commerce exercised its reasonable discretion in invoking the exception to the three month rule in the context of below-cost sales in the proceeding at bar. Therefore, the Court denies plaintiffs' motion for judgment on the agency record. Judgment is rendered in favor of defendant and this case is dismissed.

**JUDGMENT**

This case having been submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that plaintiffs' motion for judgment upon the agency record is denied in all respects; and it is further

**ORDERED** that Commerce's determination that INA's antifriction bearings having a length-to-diameter ratio of less than 4 to 1

2. Commerce further explained its rationale for this exception as follows:
    Occasionally, sales occur in less than three months of an investigation or review. This is not an expected normal pattern, but an exception from the pattern of sales for which the three month guideline was developed. If three months were defined as the extended period of time when such a pattern occurred, sales below cost would never be disregarded. This result does not reflect Congressional intent, unless the goods were obsolete or end of model year. Therefore, when we do find that all sales

only occur in one or two months, the extended period will be the months in which sales occur. Sales below cost will then be disregarded when they occur in each month for which sales exist.
Import Administration Policy Bulletin No. 94.3 (March 25, 1994), *Disregarding Sales Below Cost–Extended Period of Time* at 3. *See also Color Television Receivers From the Republic of Korea; Final Results of Administrative Review of Antidumping Duty Order,* 58 Fed.Reg. 50,333, 50,338 (Sept. 27, 1993) (Comment 5).

constitute cylindrical roller bearings and fall within the scope of the relevant antidumping duty order and are subject to this administrative review is sustained; and it is further

**ORDERED** that Commerce's application of the exception to the three-month rule in the context of below-cost sales in the proceeding at bar is sustained; and it is further

**ORDERED** that this action is dismissed.