**Slip Op. 03-51**

**United States Court of International Trade**

<table>
<tr><td>

SAN FRANCISCO CANDLE COMPANY, INC.,

        Plaintiff,

        v.

UNITED STATES,

        Defendant,

        and

NATIONAL CANDLE ASSOCIATION,

        Defendant-Intervenor.

</td><td>

Before: Pogue, Judge

Court No. 01-00088

</td></tr>
</table>

[Agency determination after remand sustained in part and reversed in part.]

Decided: May 14, 2003

Sandler, Travis & Rosenberg, P.A. (Philip S. Gallas, Gregory S. Menegaz, Mark R. Ludwikowski) for Plaintiff.

Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Reginald T. Blades, Jr., Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Glenn R. Butterton, Senior Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant.

Barnes & Thornburg (Randolph J. Stayin) for Defendant-Intervenor.

**OPINION**

**Pogue, Judge**: In San Francisco Candle Co. v. United States, 26 CIT

__, 206 F. Supp. 2d 1304 (2002), this Court remanded aspects of the

determination by the United States Department of Commerce ("Commerce") in Final Scope Ruling; Antidumping Duty Order on Petroleum Wax Candles from the People's Republic of China (A-570-504); SFCC, Compl. App. III (Feb. 12, 2001)("Final Scope Ruling"). Candles 1, 4, 9, 11, and 12 were remanded to Commerce pursuant to the agency's request.  Candles 2, 3, 5, 8, and 10 were remanded with the instruction that the agency should reconsider and clarify its reasoning as to whether the subject candles fell within the scope of the Order.[1]  The Court now reviews the results of the remand as presented in Commerce's Final Results of Remand Redetermination, San Francisco Candle Co., Inc. v. United States (Aug. 20, 2002) ("Remand Determ.").  This Court has jurisdiction under 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(a)(2)(B)(vi) (2000).

---

[1] The candles at issue in the Remand Determination are the following:

1.   Christmas Holly Leaf with Berries Candy Cane Pillar (Item No. 03433)
2.   Santa Claus Motif Candy Cane Pillar (Item. No. 13403)
3.   Christmas Tree with Star Candy Cane Pillar (Item. No. 73633)
4.   Christmas Holly Leaf Pillar (Item No. 83136)
5.   Christmas Sock Pillar (Item No. 83036)
8.   Santa Claus Candy Cane Column (Item No. 00016)
9.   Christmas Holly Leaf with Berries Candy Cane Column (Item No. 00016)
10.  Christmas Tree with Star Candy Cane Column (Item No. 00016)
11.  Christmas Holly Leaf with Berries Pillar (Item No. 166406)
12.  Christmas Patchwork Pillar and Christmas Patchwork Square (Item No. 15736)

The opinion will refer to the candles by the assigned numbers noted above.

## Background

The antidumping duty order on petroleum wax candles from the People's Republic of China, issued in August 1986, covers "certain scented or unscented petroleum wax candles made from petroleum wax and having fiber or paper-cored wicks . . . sold in the following shapes: tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and various wax-filled containers." Antidumping Duty Order: Petroleum Wax Candles from the People's Republic of China, 51 Fed. Reg. 30,686, 30,686 (Dep't Commerce Aug. 28, 1986) ("Candles Order" or "Order"). Certain novelty candles, including Christmas holiday candles, are excluded from the scope of the Order. In clarifying the scope of the Candles Order, Commerce stated that

> [t]he Department of Commerce has determined that certain novelty candles, such as Christmas novelty candles, are not within the scope of the antidumping duty order on petroleum-wax candles from the People's Republic of China (PRC). Christmas novelty candles are candles specially designed for use only in connection with the Christmas holiday season. This use is clearly indicated by Christmas scenes or symbols depicted in the candle design. Other novelty candles not within the scope of the order include candles having scenes or symbols of other occasions (e.g., religious holidays or special events) depicted in their designs, figurine candles, and candles shaped in the form of identifiable objects (e.g., animals or numerals).

Dep't of Commerce Scope Clarification Notice, Petroleum-Wax Candles from the People's Republic of China - Case Number A-570-504, Pl.'s Ex. 4 at 1 ("Scope Clarification"); see also Customs Info. Exch. Notification, Petroleum-Wax Candles from the People's Republic of

China - Antidumping - A-570-504, CIE N-212/85 (Sept. 21, 1987).

In November 2000, San Francisco Candle Company ("SFCC") requested that Commerce issue a scope ruling in connection with twelve candles. See Letter from Suda Tam, SFCC, to Sean Carey, Dep't of Commerce, Int'l Trade Admin., Antidumping and Countervailing Enforcement Group III, Compl. App. I at 2 (Nov. 17, 2000) ("Scope Ruling Request"). Commerce found eleven of the twelve candles to be within the scope of the Candles Order. See Final Scope Ruling, Compl. App. III at 4-7. SFCC challenged the results of the Final Scope Ruling in this Court pursuant to 28 U.S.C. § 1581(c), claiming that all of the candles submitted in the Scope Ruling Request were novelty candles that fell outside the scope of the Candles Order.

Commerce requested that candles 1, 4, 9, 11, and 12 be remanded for reconsideration by the agency, but asserted that candles 2, 3, 5, 6, 8, and 10 were correctly found to be within the scope of the Candles Order. SFCC I, 26 CIT at __, 206 F. Supp. 2d at 1308; Def.'s Resp. Pl.'s Mot. J. Agency R. at 2-3. The Court affirmed Commerce's finding with respect to Candle 6 and remanded candles 1, 4, 9, 11, and 12 for reconsideration by the agency.[2]

---

[2] The decorative patterns on candles 1, 4, 9, 11, and 12 include holly leaf and berry designs. Commerce originally determined the holly designs to be "generic to the winter season" and therefore ineligible for exclusion from the Candles Order as holiday novelty candles. Final Scope Ruling, Compl. App. III at 4-7 ¶¶ 1, 4, 9, 11, 12. However, this determination was contrary to Springwater Cookie & Confections, Inc. v. United States, 20 CIT

SFCC I, 26 CIT at __, 206 F. Supp. 2d at 1311, 1317.

The Court also remanded candles 2, 3, 5, 8, and 10, directing the agency to (1) assess whether the requirement that a design be visible from multiple angles is properly applied to holiday novelty candles, SFCC I, 26 CIT at __, __, 206 F. Supp. 2d at 1313-14, 1316-17; (2) refrain from considering whether a design will easily melt or burn away, id. at 1314, 1316; (3) explain whether its "minimally decorative" standard requires that a holiday design be both easily discernable and visible from multiple angles in order to qualify a candle as a holiday novelty candle, id. at 1315-17; and (4) consider the combined effects of colors and holiday designs in determining whether the decorations rendered the candles "specially designed for use only in connection with the Christmas holiday season." Id. at 1316-17 (quoting Scope Clarification, Pl.'s Ex. 4 at 1). Familiarity with the Court's earlier opinion is presumed.

---

1192, 1195-96 (1996), in which this Court stated that holly sprigs "are indeed a symbol associated with Christmas," and inconsistent with other Candles Order rulings in which Commerce, following Springwater, concluded that the holly leaf and berry design is a symbol of Christmas that qualifies a candle for the holiday novelty exception. See Final Scope Ruling, JCPenney Purchasing Corp., Pl.'s Ex. 8 at 5-8 (May 21, 2001); Final Scope Ruling, Avon Products, Inc., Def.-Int.'s Ex. 6 at 4 (May 8, 2001); Final Scope Ruling, Dollar Tree Stores, Inc. at 3-4 (Apr. 9, 1997). The Court granted Defendant's request for remand, and further instructed Commerce to consider both the cube and pillar versions of candle 12, the Christmas Patchwork candle. SFCC I, 26 CIT at __, 206 F. Supp. 2d at 1311.

**Standard of Review**

This Court will uphold an agency determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

**Discussion**

**I. Scope Determinations**

Commerce has inherent authority to define and clarify the scope of an antidumping duty investigation. See Koyo Seiko Co. v. United States, 17 CIT 1076, 1078, 834 F. Supp. 1401, 1403 (1993), aff'd, 31 F.3d 1177 (Fed. Cir. 1994). However, "while [Commerce] may interpret those orders, it may not change them." Ericsson GE Mobile Communications, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995) (citing Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)).

In determining whether a product falls within the scope of an order, Commerce looks to "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1) (2002). If the descriptions are dispositive, Commerce issues the scope ruling based on this information alone. See id. at § 351.225(k)(2); Nitta Indus. Corp. v. United States, 997 F.2d 1459,

1461 (Fed. Cir. 1993).[3]


## II. The Candles Order

In making a scope determination under the Candles Order, Commerce first determines whether the candle is formed in a shape covered by the Order.  If so, Commerce then considers whether the candle may be excluded from the Order as a novelty candle.[4]  Among the excluded novelty candles are holiday candles, including Christmas candles.  Holiday novelty candles fall outside the scope of the Order when they are "specially designed for use only in

---

[3] If a determination cannot be made using only the descriptions, Commerce initiates a scope inquiry and considers the following five factors: "(i) [t]he physical characteristics of the product; (ii) [t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2); see also Diversified Prods. Corp. v. United States, 6 CIT 155, 162, 572 F. Supp. 883, 889 (1983).  In the instant case, the criteria of 19 C.F.R. § 351.225(k)(1) are dispositive, and no consideration of the criteria enumerated in 19 C.F.R. § 351.225(k)(2) is required.

[4] As noted earlier, the following are excluded from the scope of the Candles Order as novelty candles:
    a)    "Christmas novelty candles . . . specially designed for use only in connection with the Christmas holiday season.  This use is clearly indicated by Christmas scenes or symbols depicted in the candle design;"
    b)    "Candles having scenes or symbols of other occasions (e.g., religious holidays or special events) depicted in their designs;"
    c)    "Figurine candles;" and
    d)    "Candles shaped in the form of identifiable objects, (e.g., animals or numerals)."

Scope Clarification, Pl.'s Ex. 4 at 1.

connection with the Christmas holiday season," and this use is "clearly indicated by Christmas scenes or symbols depicted in the candle design." Scope Clarification, Pl.'s Ex. 4 at 1.

The holiday novelty exclusion is narrowly defined, requiring specific and easily recognizable holiday images. See SFCC I, 26 CIT at __, 206 F. Supp. 2d at 1310; Russ Berrie & Co. v. United States, 23 CIT 429, 440, 57 F. Supp. 2d 1184, 1194-95 (1999); Springwater Cookie & Confections, Inc. v. United States, 20 CIT at 1197 ("[C]olors per se will not exempt a candle from the scope of the antidumping duty order."). In determining whether a candle falls within the holiday novelty exception, Commerce considers all of the candle's characteristics in combination. See, e.g., Remand Determ. at 7-8.

The Remand Determination contains a discussion of the standards Commerce applies in determining whether a candle qualifies as a holiday novelty candle that is excluded from the scope of the Order. Commerce states that a candle's "holiday- or event-specific design must be large enough or proportionately situated on the candle as to render it easily recognizable from most perspectives." Remand Determ. at 7. In response to the Court's inquiry in SFCC I, the agency states that its ruling in Final Scope Ruling, Endar Corp. (Jan. 11, 2000) ("Endar Ruling") did not promulgate a two-element standard requiring that a design be both easily recognizable and visible from multiple angles in

order to qualify a candle for the novelty candle exception. SFCC I, 26 CIT at __, 206 F. Supp. 2d at 1315-16; Remand Determ. at 7-8 ("[T]he Department does not interpret the ruling on Endar's alleged bamboo candle to require per se that the candle meet both standards discussed in that ruling (whether the design is easily recognizable and visible from most angles) in order to qualify for the novelty candle exception."). Commerce emphasizes in its Remand Determination that the agency "takes into consideration the totality of the candle (the combination of the colors, patterns, and images)," and states that "[the Endar] guidelines were designed to simply help the Department interpret the exclusion narrowly." Remand Determ. at 8.

Neither Commerce's Remand Determination nor its earlier Candles Order rulings offer a clear definition of the "minimally decorative" standard. However, a review of the Remand Determination and other rulings indicates that in determining whether a design is "minimally decorative," the agency considers whether the design is easily seen or is easily discernable, the size of the design relative to the size of the candle, the location of the design on the candle, and whether the design is located in only one place on the candle. See Endar Ruling at 5 (noting that the bamboo design on the subject candle was "not easily discernable"); Remand Determ. at 7 (indicating that a design is "minimally decorative" when it is not "large enough or

proportionately situated on the candle" that it may be seen easily); Final Scope Ruling, Interpro International at 7 (Sept. 26, 2002) (holding that a design was "minimally decorative" because it was "small and/or singularly placed on the candle") ("Interpro Ruling").  Additionally, it appears that Commerce may inquire whether a design is "identifiable from most angles" as part of its "minimally decorative" standard.  See, e.g., Endar Ruling at 5 (finding that the subject candle's design was "minimal[ly] decorative" because it was "not easily discernable" and "not visible from all sides"); but see Remand Determ. at 9 (suggesting that the "identifiable from most angles" standard is separate from, rather than a component of, the "minimally decorative" standard); Interpro Ruling at 7-8 (stating that "[i]f the . . . holiday-specific design is not identifiable from most angles, or if the design or characteristic is minimally decorative, the Department may determine that the candle does not qualify for exclusion from the Order under the novelty candle exception.").

In SFCC I, the Court also asked Commerce to clarify whether the requirement that a design be visible from multiple angles, which was previously applied only to candles allegedly formed in the shape of identifiable objects, is also properly applied to holiday novelty candles.  See 26 CIT at __, 206 F. Supp. 2d at 1313-14.  In its Remand Determination, the agency states that "[s]tarting with the SFCC Ruling, the Department recognized that

the 'identifiable from most angles' benchmark was appropriately applied . . . to candles allegedly associated with a recognized holiday as well as to candles allegedly in the shapes of identifiable objects." Remand Determ. at 9. Commerce explains that application of the standard to both categories of novelty candles is proper because "these characteristics both fall under one and the same exception to the scope of the Order: the novelty candle exception." Id. at 9-10. The agency also asserts that examining candles in light of the "identifiable from most angles" standard helps to "ensure[] that the candles for which the novelty candle exception is requested truly meet the requirements of this narrowly-construed exception to the scope of the Order." Id. at 9.

In summary, it appears that Commerce may find a candle design to be "minimally decorative" and therefore within the scope of the Order when the candle's holiday-specific design cannot easily be seen or discerned, when the design is very small in relation to the size of the candle, or when the design is "singularly located" on the candle. Commerce also may find that a holiday candle is within the scope of the Order when its design is not easily recognizable as a holiday-specific image, or when the design is not visible or identifiable from most angles. Commerce evaluates candles on a case-by-case basis, and looks at the totality of the candle's design characteristics in order to assess the combined effects of colors and design patterns.

The Court now proceeds to evaluate Commerce's application of these standards to the candles at issue. Commerce's application of its legal standards will be upheld if the record can be reasonably interpreted to support the agency's decisions.

**A.    Candles 1, 2, and 3**

Candles 1, 2, and 3 are pillar candles. Each has diagonal "candy cane" pattern stripes on the body of the candle and a holiday image imprinted into the top surface of the candle. Candle 1 has red and white stripes and a holly leaf and berry image printed on the top surface. Similarly, Candle 2 has red and white stripes and an image of Santa Claus printed on top. Candle 3 has red, white, and green stripes and an image of a Christmas tree with a star printed on top. Upon reconsideration, Commerce determined that candles 1 and 3 fall outside the scope of the Order, while candle 2 is covered by the Order.

In its reconsideration of candle 2, Commerce stated that the image imprinted on the top surface is only "'minimally decorative' and can only be viewed when looking down at the top surface of the candle." Remand Determ. at 14. Commerce opined that this "singular image[] [is] not substantial enough to transform" this candle into an exempt holiday novelty candle. Id. Additionally, although Commerce acknowledged the red and white "peppermint candy" color pattern on the candle, id. at 17, the agency concluded that

"even when taking into consideration the combined effect of the colors, patterns, and images on these candles, the result is not sufficient to qualify these candles for the holiday novelty exception." Id.

In its analysis of candles 1 and 3, Commerce stated as follows:

> Although the small images of the holly leaves and berries and the Christmas tree with a star, [sic] are, when viewed in isolation, minimally decorative and not easily recognizable as holiday images from most angles, the combination of these images with other designs characteristic of Christmas, such as the red, green, and white color combination, indicate that these candles were "specially designed for use in connection with the Christmas holiday season." Unlike candles 2, 8, 9, and 10, candles 1 and 3 have more than a "peppermint candy" striped effect; candles 1 and 3 also have a green stripe, which taken in concert with the other colors and images, more closely identifies these candles as designed for the Christmas holiday season.

Remand Determ. at 19-20.

The Court agrees that in the case of candle 3, the red, white, and green stripes and the Christmas tree with star image closely identify the candle with the Christmas holiday. Therefore, the Court finds that Commerce's decision to exclude candle 3 from the scope of the Candles Order is supported by substantial evidence.

However, candle 1 does not have a green stripe. Rather, candle 1, like candle 2, has only red and white striping. In addition to the red and white diagonal stripes, candle 1 bears an image of holly leaves and berries and candle 2 bears an image of Santa Claus. Both holly leaves and berries and Santa Claus are

images closely associated with the Christmas holiday.  The images, although present only on the tops of the candles, are easily identifiable as holiday images and occupy significant portions of the top surfaces of the candles.[5]  Moreover, as the candles stand only 2 7/8 inches to 3 inches tall, the images are distinctly visible from most angles and appear to be the central design element of the candle.  Finally, the red and white colors and "candy cane" striping, in combination with the Santa Claus or holly leaves and berries designs, strengthen the identification of these candles with the Christmas holiday.

In summary, candles 1 and 2 have clearly identifiable, highly visible holiday-specific images, as well as color combinations and patterns that strengthen the identification with the Christmas holiday.  As such, these candles meet the requirements set out in the Scope Clarification for holiday novelty candles that are excluded from the scope of the Order.  While the Court "may not substitute its judgment for that of the [agency] when the choice is between two fairly conflicting views," Timken Co. v. United States,

---

[5] Candles 1 and 2 measure approximately 2 7/8 inches in diameter. Approximately 1/8 to 3/16 of the diameter at the outer edge of the candle's top surface is occupied by the red and white striped outer layer, leaving a red center section that measures approximately 2 3/4 to 2 11/16 inches in diameter, into which the holiday specific images are set.  The holly sprig on the top surface of candle 1 measures approximately 1 1/2 inches long at its longest point and 1 7/8 inches wide at its widest point.  The Santa Claus image on the top surface of candle 2 measures approximately 1 7/8 inches long and 1 5/8 inches wide at its widest point.

26 CIT __, __, 201 F. Supp. 2d 1316, 1319-20 (2002) (internal citations and quotations omitted), the evidence here supports only the conclusion that these candles are within the holiday novelty exception. Consequently, the Court finds that Commerce's determination that candle 2 is within the scope of the Order is neither supported by substantial evidence nor in accordance with law. The Court therefore reverses Commerce's determination with respect to candle 2, and finds candles 1 and 2 to be holiday novelty candles that are excluded from the scope of the Order.

**B.   Candles 4 and 5**

Candle 4, the Christmas Holly Leaf Pillar, is a dark green pillar candle with an image of holly leaves and berries sketched in white on one side of the candle. Candle 5, the Christmas Sock Pillar, is a white pillar candle with an image of a Christmas stocking sketched in red on one side of the candle. The sketched stocking image also contains an image of a Christmas tree with a star on the top.

Commerce concluded that both of these candles fall within the scope of the Candles Order. The agency stated that "the images are only sketches, are relatively small and are singularly imprinted on only one surface or side of each candle. Therefore, the respective images are 'minimally decorative' and can only be viewed from one angle." Remand Determ. at 19.

Upon examination, the Court notes that if the candle is turned so that the image faces away, it appears to be simply a solid green or white pillar.[6]  Thus, while the decorative images are holiday-specific, they are "singularly placed" on the candles, see Interpro Ruling at 7, and not easily seen from most angles.  Endar Ruling at 5.  As the images meet two of the characteristics of "minimally decorative" designs, the Court upholds Commerce's determination that these candles fall within the scope of the Order.

### C.    Candles 8, 9, and 10

Candles 8, 9, and 10 are column candles approximately twelve inches tall.  Candle 8, the Santa Claus Candy Cane Column, has red and white "candy cane" striping and a small image of Santa Claus imprinted in a circle in one side of the candle.  Candle 9, the Christmas Holly Leaf with Berries Candy Cane Column, has red, white, and green striping and a small image of a holly sprig imprinted into one side.  Candle 10, the Christmas Tree with Star Candy Cane Column, has red, white, and green striping and a small image of a Christmas tree with a star on top imprinted into one

---

[6] Commerce also stated that "we do not believe that these specific designs are easily recognizable as the holly leaves and berries and stocking, respectively, that they are alleged to be because they are only abstract outlines."  Remand Determ. at 19.  As the Court affirms Commerce's determination that the images are "minimally decorative" on other grounds, we do not reach the question whether the images are easily recognizable as holiday images.

side.

Commerce found candles 8, 9, and 10 to be within the scope of the Order, stating that "although these candles possess images related to the Christmas season . . . the designs are 'minimally decorative' and are not easily recognizable as holiday images from most angles."  Remand Determ. at 13.

The holiday images set into the sides of these columns are very small and located in only one place on the candle, thus meeting two of the characteristics considered by Commerce to be "minimally decorative."  See, e.g., Remand Determ. at 7; Interpro Ruling at 7.  The small holiday images also cannot be seen from most angles.

The columns are covered in red and white or red, white, and green striped "candy cane" color patterns.  Color patterns may link candles more closely to the Christmas holiday season, and the Court notes that Commerce has found red, white, and green striping more closely associated with the Christmas holiday than red and white striping alone.  In its analysis of candle 3, discussed earlier, Commerce concluded that the green color in addition to the red and white stripes and the otherwise "minimally decorative" holiday image was sufficient to qualify the candle as a holiday novelty candle.  Remand Determ. at 19-20.

In this case, however, Commerce stated that

the small images . . . on one small place on the side of
candles 8, 9, and 10, [sic] are not easily seen when

viewing the candles from most perspectives and, furthermore, the Department has ruled in the past that the "peppermint candy" striped design does not relate specifically to the Christmas holiday. Therefore, the combined effect of colors and designs does not reach a level that would qualify these candles for the holiday novelty exception.

Remand Determ. at 17-18. After examining the candles, the Court finds that due to the inconspicuousness of the holiday-specific images, it is reasonable to conclude that even those candles bearing the additional green stripes cannot qualify as holiday novelty candles. Therefore, the Court upholds Commerce's determination that candles 8, 9, and 10 are within the scope of the Order.

### D.    Candles 11 and 12

Candle 11 is a red pillar candle covered with a raised holly leaf and berry design. Commerce determined that candle 11 falls within the scope of the Order because the design does not "resemble a holly sprig in the traditional sense." Remand Determ. at 19. The agency stated that

> [t]he leaves and berries are scattered around the surface of the candle, rather than grouped together, as a holly sprig is normally pictured, and could represent another type of leaf or berry. In this respect, this candle does not relate specifically to the Christmas holiday season; rather, it could be used generically throughout the fall or winter season.

Id. (internal citation omitted).

The Court finds that the agency's reasoning in connection with

candle 11 is supported by substantial evidence. The agency asserts that the holly image closely associated with the Christmas holiday is the holly sprig, showing the holly leaves and berries grouped together. Remand Determ. at 11 ("[T]he Department also considers that, in order for holly leaf and berry design [sic] to qualify a candle for exclusion from the Order, it must be both explicit and easily identifiable . . . [T]he holly leaf and berry image must be readily recognizable as the <u>traditional</u> holly leaf and berry, <u>i.e.</u>, with the holly leaves and berries grouped together."). This reasoning is supported by <u>Springwater</u>, which refers to "sprigs" of holly as a symbol closely associated with the Christmas holiday. 20 CIT at 1196. Here, the leaves and berries are separated, and it is not clear that the leaves represent holly leaves. As the candle does not bear a clearly identifiable specific holiday image, as required by the Scope Clarification, the agency's decision to include it within the scope of the Candles Order is supported by substantial evidence and in accordance with law.

Finally, Commerce determined that both the pillar and square versions of Candle 12 are holiday novelty candles and are excluded from the scope of the Candles Order.[7] <u>See</u> Remand Determ. at 20.

---

[7] Plaintiff asserts that the Christmas Patchwork Square is excluded from the scope of the Order because it is not one of the enumerated shapes. Pl.'s Partial Opp'n to Def.'s Aug. 20, 2002 Remand Results at 21-23; <u>see also</u> Candles Order, 51 Fed. Reg. at 30,686 (stating that the Order covers candles in the shapes of "tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and various wax-filled containers").

These candles are decorated with a variety of images, including holly leaves and berries, candy canes, evergreen trees, snow-covered houses, snowflakes, cardinals, stars, reindeer, and multicolored patterns, arranged in a patchwork design. Commerce concluded upon reconsideration that the designs and color combinations of the candles, and particularly the inclusion of a recognizable holly leaf and berry design and the use of red, white, and green coloring, provides "identification with the Christmas holiday." Id. After examining candle 12, the Court finds that the agency may reasonably conclude that the combination of designs and colors indicates that candle 12 is intended for use "only in connection with the Christmas holiday season." Scope Clarification, Pl.'s Ex. 4 at 1. Therefore, the Court affirms Commerce's determination that candle 12 is a holiday novelty candle excluded from the scope of the Order.

---

Commerce has previously determined that candles in the shapes of cubes or squares fall within the scope of the Order. See Final Scope Ruling, Request for Rulings on a Petroleum Wax Candle in the Shape of a Cube or Square (Mervyn's, Enesco Corp., and Midwest of Cannon Falls) (Dec. 9, 1996); see also Final Scope Ruling, Leader Light Ltd. (Aug. 31, 1998) (finding cube and square shaped candles to be within the scope of the Order). Consequently, Plaintiff's argument is without merit.

## Conclusion

In accordance with the foregoing discussion, this Court reverses Commerce's determination as to candle 2, and determines instead that candle 2 is a holiday novelty candle excluded from the scope of the Candles Order. The Court upholds Commerce's determination as to candles 1, 3, 4, 5, 8, 9, 10, 11, and 12.

_____
Donald C. Pogue
Judge

Dated:    May 14, 2003
          New York, New York